[No. 30764. Department Two. March 7, 1949.]

SEATTLE-FIRST NATIONAL BANK, *as Trustee, Respondent,* v.
MARIAN HENDERSON MACOMBER, *Individually and
as Executrix, et al., Defendants,* ISABEL V.
MURPHY, *Appellant.*[1]

[1]Reported in 203 P. (2d) 1078.

*Robert B. Walkinshaw* (*J. H. Sapiro,* of counsel), for appellant.

*Emory, Howe, Davis & Riese,* for respondent.

*Russell V. Hokanson, Guardian ad Litem.*

SCHWELLENBACH, J.—This is an appeal from a judgment holding that certain stock specifically bequeathed to appellant in decedent's will is subject to Federal estate taxes.

On December 28, 1934, L. A. Macomber conveyed, assigned, and set over to the First National Bank of Seattle (predecessor in interest of the respondent), as trustee, certain property of the value of ninety-three thousand dollars. The trust agreement provided: That the trustee pay to the grantor during his lifetime the net income from the trust estate in monthly installments; that upon the grantor's death, the trust should continue for the benefit of the grantor's wife and daughter; that the income should be paid to the grantor's wife until the daughter reached the age of twenty-three years, when the income should be divided equally between the wife and the daughter.

The agreement further provided that, in case the daughter should predecease the wife without leaving any children, the wife should take all; that upon the death of the wife the trust should continue for the benefit of the daughter until she reached the age of forty-five years. At that time she would have the privilege of receiving all the remainder of the trust outright, or she could continue to receive the income. It was also provided that, in the event the daughter did not survive to take final disposition of the trust estate, then, if she should leave one or more children surviving, the trust should continue, and the trust be disbursed for their benefit until the youngest survivor should reach the age of twenty-one years, when the trust would be terminated and the remainder of the estate would be divided among the survivors.

Mr. Macomber added to the trust estate from time to time, until, at his death on December 3, 1944, its assets were valued at $333,354.99.

On February 20, 1935, Mr. Macomber executed his will. Paragraphs Nos. 2 and 3 provided:

"2nd. I hereby direct that my executrix hereinafter named shall have and is hereby given the right and power to sell or otherwise dispose of any or all of my estate, real or personal, at such price and upon such terms as she may deem wise and advisable, and place the proceeds of such sale with the First National Bank of Seattle, and by said Bank to be placed in the L. A. Macomber Trust, which I have established, and now existing, in said Bank. And I direct that such proceeds shall be treated as part and parcel of such Trust and controlled and disposed according to the terms thereof.

"3rd. For the reason that the terms of said Trust, set forth in paragraph two hereof, make full detailed provision for my wife, Marian H. Macomber and my daughter, Marjorie Macomber, I make no special provision in this my last will and testament for my said wife or daughter, other than through said L. A. Macomber Trust."

On October 3, 1944, one month prior to his death, he executed a codicil to his will. He therein devised an eighty-acre ranch in Riverside county, California, to a Mr. and Mrs. Reichert. Nothing was mentioned about this devise being exempt from taxes or other charges. The second paragraph of the codicil provided:

"I hereby give, devise and bequeath to my friend and most understanding companion, Isabel V. Murphy, of San Francisco, California, One Thousand shares of common stock of Shell-Union Oil Company, now held for my account by Merrill, Lynch, Pierce, Fenner and Bean, brokers in Seattle, Washington. I direct that all estate, inheritance, transfer and other taxes and charges of every nature that may be made against the stock herein mentioned, be paid by my estate outside of said stock, so that the same may go to said legatee free from and without any deductions of any nature or kind."

Upon his death, he left surviving his wife, Marian Henderson Macomber; his daughter, Marjorie Macomber Bray; and Marjorie's son, Richard V. Bray, Jr. He left property in the states of Washington, Oregon, and California, and in British Columbia. Mrs. Macomber was appointed executrix of his estate in Washington.

The assets of the estate in British Columbia were insufficient to satisfy the charges against the estate there. The assets in Oregon were sold and the proceeds forwarded to the administratrix with will annexed in California. The assets of the estate in California, except the property specifically bequeathed to the Reicherts, were converted into cash, and the balance remaining after the payment of administration costs and debts against the estate, including the proceeds of the sale of the Oregon assets, in a total amount of $72,992.47, were forwarded to the trustee.

The trustee refused to accept such funds as part of the trust assets, and Mrs. Macomber, as executrix of the probate estate, remitted the $72,992.47 to the collector of internal revenue in partial payment of estate taxes. Previously, she had applied $30,000 realized from the sale of Washington assets of the estate to Federal estate taxes, making a total of $102,992.47 paid for such purpose. There remains due the United States for Federal estate tax the sum of $27,715.60, plus interest.

The above-described tax is based upon the valuation of the trust estate of $333,354.99; the Washington estate of $61,321.27; the California estate of $88,599.99, the Oregon estate of $3,000; the British Columbia estate of $943, and a life insurance policy in the amount of $100,000, of which Mrs. Macomber and the daughter are beneficiaries. The life insurance was not included as a part of the probate estate.

There now remains in the probate estate the sum of $3,000, and the one thousand shares of stock specifically bequeathed to Isabel V. Murphy and valued at $30,500. The following costs of administration remain unpaid:

| | |
|---|---|
| Family allowance | $ 4,000.00 |
| Executrix Fees | 2,000.00 |
| Attorney's Fees | 2,000.00 |
| Balance Federal Tax | 27,715.60 (plus interest) |
| Total | $ 35,715.60 |

This action was commenced by the trustee seeking a declaratory judgment, declaring the respective duties and liabilities of the parties herein for payment of the balance

of the Federal estate tax due to the United States and declaring the order in which the parties and estates are liable for the tax, and declaring the duties and liabilities of the parties with respect to the unpaid costs of administration.

The judgment decreed: that all of the residuary estate available to the executrix, consisting of approximately three thousand dollars, be first used toward payment of unpaid expenses of administration; if any further of the residuary estate remains available, it shall be used toward payment of any and all unpaid Federal estate tax, together with any interest and penalties due; that, after all of the residue shall have been used, the one thousand shares of Shell-Union Oil Company stock, specifically bequeathed to Isabel V. Murphy, shall be subject to payment of the unpaid expenses of administration, if any, and subject to the payment of any unpaid Federal estate taxes and interest and penalties; that if there is any balance remaining after payment of the above, it shall be distributed to Isabel V. Murphy; that after the above payments shall be made, any balance of Federal estate taxes remaining due shall be paid by the trustee out of the trust estate. This appeal follows.

By far the greater portion of the Federal estate tax due is attributable to the inclusion in the gross estate of the trust property and the life insurance, for tax purposes. That the trust *inter vivos* is subject to the Federal estate tax under 26 U. S. C. 811 (c), 1946 ed., is not disputed.

■ Before proceeding further, it might be advantageous to inquire into the nature of an estate tax. An estate tax is a tax upon the transfer of property by the decedent upon his death, and is to be distinguished from an inheritance or succession tax, which is a tax upon the taking of property by a beneficiary or distributee. The estate tax is upon the entire estate, payable as an expense of administration, and not upon the particular devise, bequest, or distributive share of the individual beneficiary. See 28 Am. Jur. 8, Inheritance, Estate and Gift Taxes, §§ 2 to 5.

■ The Federal government is not concerned with the ultimate burden of the estate tax. It places primary liability for payment upon the personal representative, as to the

tax upon all property required to be included in the gross estate. The ultimate burden of the estate tax is to be determined according to state law. *Riggs v. Del Drago*, 317 U.S. 95, 87 L. Ed. 106, 63 S. Ct. 109, 142 A.L.R. 1131.

The general rule is that, in the absence of statute, or in the absence of a contrary provision by the decedent, the tax shall be paid out of the residuary estate. This rule is well set out in an annotation in 115 A. L. R. 917:

"In the absence of a contrary provision by the decedent or by statute, it has been held that the burden of an estate tax, attributable to the inclusion in the taxable estate of property passing by an inter vivos gift or trust, must be borne entirely by the decedent's residuary estate which passes by will or intestacy, and that his executor, after paying the tax from the residuary estate, is not entitled to reimbursement from the donee of the inter vivos transfer."

At least eleven states (Arkansas, California, Connecticut, Delaware, Maryland, Massachusetts, New Hampshire, New York, Pennsylvania, Tennessee, Virginia) have seen fit to enact statutes providing that the Federal estate tax shall be prorated among all the beneficiaries of property included in the gross estate for tax purposes, unless the decedent has directed otherwise. In a majority of the above states, the courts had followed the general rule prior to enactment of the statutes. It might also be noted in passing that in 1947 Maine repealed a proration statute passed in 1945.

Our state has no apportionment statute with regard to the Federal estate tax, although there is direction as to the incidence of our inheritance tax in Rem. Supp. 1943, § 11202 and Rem. Rev. Stat., § 11209 [P.P.C. §§ 974-21,-45].

Inasmuch as we have no cases in this jurisdiction dealing with the incidence of the Federal tax where property passing outside the will is subject to tax, decisions in the states which have passed on the question, in the absence of a statute, will be reviewed.

Kansas, in *Central Trust Co. v. Burrow*, 144 Kan. 79, 58 P. (2d) 469, held that the executor was not entitled to recover from recipients of property transferred in contemplation of death, a proportionate share of Federal es-

tate taxes, decedent's residuary estate being liable for the entire amount.

From *Hooker v. Drayton,* 69 R. I. 290, 33 A. (2d) 206, 150 A. L. R. 723, it appears that Rhode Island only follows the general rule with regard to the probate estate of the testator, that the residuary estate is not to be charged with taxes upon property passing outside of the will.

New Jersey has been the leading follower of what may be termed the rule of "equitable apportionment" — that is, that the tax shall be prorated upon all the property transferred to recipients upon the decedent's death, regardless of the method of transfer. *Commercial Trust Co. v. Millard,* 122 N. J. Eq. 290, 193 Atl. 814. The rule has also received approval in *Trimble v. Hatcher's Executors,* 295 Ky. 178, 173 S. W. (2d) 985.

█ In the absence of statute, or direction by the testator or settlor to the contrary, the burden of Federal estate taxes is upon the residuary estate of the decedent, including taxes occasioned by the inclusion of property passing outside the will, and we so hold. The reason for this rule is stated in *Bemis v. Converse,* 246 Mass. 131, 140 N. E. 686, as follows:

"It is strongly argued that the intention of the settlor and testator cannot have been that the entire burden of a tax of this nature should fall upon his estate and the property held under the trust deed be completely exonerated. Courts cannot speculate concerning the intention of settlors and testators as to where they intend the burden of taxes to rest. The instrument as written must govern. Opportunity is freely open in framing trust deeds and wills to make full and accurate expression of desire and intention respecting the payment of taxes and the particular beneficiaries whose shares shall be exonerated from or bear that pecuniary exaction for the support of government. Specific provision on this point is familiar in wills and is not infrequently found in other instruments. In the absence of a definite declaration on the subject it must be presumed that the intention was that the ultimate weight of taxation must rest where the law places it. It cannot be presumed that anything else was intended than what is stated in the written instrument. It may be, for aught that now can be known,

that the precise result which has happened was intended. There is no jurisdiction in equity to prescribe what may seem fairer than the settlor or testator has declared. To do that is as foreign to chancery principles as to remold a will in order to make it conform to different conceptions of justice or fairness from those indulged by the testator."

■ However, we are now confronted with the proposition in the present case of the assets of the residuary estate being insufficient to pay the entire tax. The decisions are not in harmony as to the property next liable in a situation as confronts us. Nor do we feel obliged to formulate one for this jurisdiction, the testator having inferentially declared what property must bear the burden.

The testamentary dispositions were three in number: (1) the devise to the Reicherts; (2) the bequest to Isabel V. Murphy; (3) the remainder to become a part of the trust. Number three has been exhausted (except for three thousand dollars), and number one has been previously distributed in the California proceedings. Number two contained the following express provision:

"I direct that all estate, inheritance, transfer and other taxes and charges of every nature that may be made against the stock herein mentioned, be paid by my estate outside of said stock, *so that the same may go to said legatee free and without any deductions of any nature or kind.*" (Italics ours.)

The wishes and intention of the testator must govern. Here is language which is clear and specific. He wanted the stock to go to the legatee free and clear. This court has held that such a provision will be given effect. *In re Belknap's Estate,* 12 Wn. (2d) 643, 123 P. (2d) 358. It was his own property and he could dispose of it as he saw fit.

There is no contention that the widow and daughter would be so defrauded by this provision of the will as would warrant the interference of a court of equity. They were well provided for. They are the beneficiaries of the *inter vivos* trust of over $330,000 plus life insurance of $100,000. The duty of the courts being to carry out the testator's intention whenever the same is clear, the stock in

question should be distributed free and clear of *any* estate or inheritance taxes or charges of any nature or kind. The result of the testator's intention is that the trust is next liable for payment of taxes, estate and inheritance, and the remaining costs of administration, with the one exception which involves the proceeds of the life insurance.

26 U. S. C. 826 (c), 1946 ed., in effect at decedent's death, provides:

"Unless the decedent directs otherwise in his will, if any part of the gross estate upon which tax has been paid consists of proceeds of policies of insurance upon the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds of such policies bear to the sum of the net estate and the amount of the exemption allowed in computing the net estate, . . ."

The decedent not having provided otherwise for the tax due to the inclusion in the gross estate of the $100,000 proceeds of the life insurance, the statute is clear that the beneficiaries are liable to the executrix for their proportionate share of said tax. See *Priedeman v. Jamison*, 356 Mo. 627, 202 S. W. (2d) 900.

The question of the liability of the California realty, distributed to the Reicherts, will not be inquired into, for the reason that neither the recipients nor the ancillary administratrix are subject to the jurisdiction of this court in this proceeding. That is a matter to be determined under the law of the situs of the property.

The judgment is affirmed as to that portion holding the residuary estate primarily liable for the costs of administration and Federal estate taxes, and is reversed as to the remainder thereof and remanded to the trial court with instructions to decree that the executrix shall distribute to Isabel V. Murphy the specific bequest of the one thousand shares of stock free and clear of any taxes or charge for administration whatsoever. The executrix shall first recover from the beneficiaries of the insurance policy the propor-

tionate share of the total Federal estate tax. Any balance of estate taxes or costs of administration shall be paid out of the trust estate.

MALLERY, ROBINSON, SIMPSON, and HILL, JJ., concur.