# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of SVEN H. ELLSTROM, deceased, | No. 78452-8-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ELISABETH ELLSTROM-BAUER, | |
| Appellant. | FILED: June 10, 2019 |

MANN, A.C.J. — In construing an instrument creating a trust, the court's paramount duty is to ascertain the maker's intent and effectuate that intent. The intent is derived from the instrument as a whole and we construe specific provisions in light of the entire document. Applying these principles, the trial court correctly concluded that the co-personal representatives/trustees of the Estate of Sven H. Ellstrom had the discretion to pay the estate's administrative expenses using any assets in the trust estate. We affirm the court's order granting the co-personal representatives' petition for instructions under the Trust and Estate Dispute Resolution Act (TEDRA) chapter 11.96A RCW.

I.

Sven Ellstrom executed a "pour over" will in favor of the Sven Ellstrom Revocable Living Trust on July 14, 2015.[1] Sven died almost a year later on May 18, 2016, leaving his three adult children as beneficiaries, Thomas Ellstrom, Erick Ellstrom, and Elisabeth ("Lisa") Ellstrom-Bauer.[2] The will and trust documents name Sallie Sundquist and Richard Prout as co-personal representatives and co-trustees (Co-PRs). The will gives the Co-PRs broad nonintervention powers.[3]

Article 5 of the trust is entitled "Division of Trust Upon Death of Grantor" and distributes property of the trust according to three categories. First, the trust provides a process for the distribution of "tangible personal property." Second, the trust makes "specific bequests" of certain parcels of real property and of the trust's "marketable securities, bonds and cash." With regard to the securities, bonds, and cash—in other words, the liquid assets—the trust provides that after the payment of compensation to the Co-PRs and estate taxes, $100,000 will be distributed to Thomas. The remaining liquid assets, if any, will be divided equally between Lisa and a separate trust created for the benefit of Erick. Finally, all other property, the residue of the estate, passes to Erick's trust.

---

[1] "A pour-over will is a testamentary device wherein the writer of a will creates a trust and decrees in the will that the property in his or her estate, at the time of his or her death, shall be distributed to the trustee of the trust." In re Estate of Wimberly, 186 Wn. App. 475, 483, 349 P.3d 11 (2015).

[2] We use first names for clarity because several of the individuals involved in this appeal share the same last name.

[3] In general, a superior court has limited authority to intervene in the administration of a nonintervention estate once the court declares the estate solvent. In re Estate of Rathbone, 190 Wn.2d 332, 339, 412 P.3d 1283 (2018). However, as what has happened here, the personal representative or another person with statutorily conferred authority may invoke the court's authority to intervene. Rathbone, 190 Wn.2d at 339.

After Sven's death, certain disputes arose that affected the administration of the estate and resulted in litigation and settlement. In one of the prior lawsuits, the court enforced the trust's "no contest" clause and ruled that Thomas forfeited all beneficial interest under the trust. See Ellstrom v. Ellstrom, No. 17-4-04883-3 (King County Super. Ct., Wash.)

To avoid further litigation, the Co-PRs filed a petition for instructions in superior court under TEDRA seeking to resolve several outstanding contested issues and allow for final resolution of the estate. Primarily, the Co-PRs sought authorization to pay the administrative expenses of the estate, which included funeral expenses and primarily, legal fees, using the trust's liquid assets. Under the Co-PRs' proposal, the administrative costs would be borne equally by Lisa and by the trust established for Erick's benefit. The Co-PRs relied on a provision of the trust that gives them discretion to pay administrative expenses, including attorney fees, from the "Trust Estate."

Lisa opposed the proposal. She argued that, in light of the specific bequest provisions and the superior court's ruling that eliminated Thomas's bequest, there were only two allowable deductions from the bequest of liquid assets that existed at the time of Sven's death: trustee compensation and estate taxes. Lisa contended that the administrative expenses should be paid from the residue of the estate and allocated solely to Erick's trust.

Following a hearing, the court entered an order on the TEDRA petition in accordance with the Co-PRs' proposal allowing for payment of the administrative costs of the estate from the liquid trust assets bequeathed to Lisa and Erick's trust. Lisa appeals.

3

II.

Resolution of this case requires us to interpret provisions of a trust. The interpretation of a will or trust instrument is a question of law that we review de novo. In re Estate of Bernard, 182 Wn. App. 692, 704, 332 P.3d 480 (2014). The purpose of construing such instruments is to give effect to the testator's intent. In re Estate of Riemcke, 80 Wn.2d 722, 728, 497 P.2d 1319 (1972). We ascertain the intent from the language of the testamentary instrument itself, considering the instrument in its entirety and giving effect to every part thereof. In re Estate of Bergau, 103 Wn.2d 431, 435, 693 P.2d 703 (1985). A trust term is ambiguous if the language is susceptible to more than one reasonable interpretation. Bergau, 103 Wn.2d at 435. If the trust's language is unambiguous, it requires no interpretation or construction. In re Washington Builders Benefit Trust, 173 Wn. App. 34, 75, 293 P.3d 1206 (2013).

The dispute revolves around the provisions of Article 5, providing for the distribution of all trust estate assets and Article 7, governing the payment of the estate's administrative expenses. Articles 5.2 and 5.3 outline the specific bequests and the residue of the estate and provide, in relevant part:

5.2 Specific Bequests.

...

(c)     Marketable securities, Bonds, and Cash. *After payment of the amounts described in Article 8.1 (b) herein* (regarding compensation to be paid to Sallie and Dick as Trustees), which amounts shall be paid from Grantor's marketable securities, bonds, and/or cash, any interest Grantor or the Trust owns in marketable securities (not to include any interests in closely-held entities), bonds, and cash shall be divided as follows:

(i)     Thomas A. Ellstrom. One hundred thousand dollars ($100,000) shall pass to THOMAS A. ELLSTROM; provided, however, if THOMAS A. ELLSTROM does not survive the Grantor by thirty (30) days, then such

4

amount shall pass to his descendants in *per stirpes* shares, subject to Article 9.3 herein with regard to any minor descendant; provided further, if neither THOMAS A. ELLSTROM nor any of his descendants survive the Grantor by thirty (30) days, then this gift shall lapse and such amount shall instead pass pursuant to Article 5.2(c)(ii) below.

(ii)    Remainder. After the payment of the amounts described in Article 8.1(b) herein (regarding compensation to be paid to Sallie and Dick as Trustees) and the specific bequest pursuant to Article 5.2(c)(i) above, *and after the payment of the amounts described in Article 7.1(a)(ii) herein (regarding the payment of estate tax, with all such tax being paid out of the property passing pursuant to this Article 5.2(c)(ii) before any amounts are distributed pursuant to this Article 5.2(c)(ii)*, the remainder, (if any) of any interest Grantor or the Trust owns in marketable securities (not to include any interests in closely-held entities), bonds, and cash shall be divided into equal shares, with one share passing to each of the following children of Grantor: (1) ELISABETH L. ELLSTROM-BAUER; and (2) ERICK S. ELLSTROM, provided that any share allocated to Erick (or to his descendants) shall pass to the Trustee of the Erick Ellstrom Trust to be held, administered, and distributed as an integral part of such trust as provided therein; ...

5.3    Residue — Erick Ellstrom Trust. After giving effect to Articles 5.1 and 5.2 above, the residue of the Trust Estate, after payment of the amounts described in Article 7, shall pass to the Trustee of the Article 6.1 Erick Ellstrom Trust to be held, administered, and distributed as provided therein.

Article 7 governs "Taxes and Administrative Expenses." Article 7.1(a) allocates the payment of "death taxes." Under 7.1(a)(ii) unless "death taxes" are attributable to a "disclaimer of property," they must be paid from the specific bequest of liquid assets and only if that property is insufficient, from the residuary:

(ii)    Second, from property passing pursuant to Article 5.2(c)(ii), and to the extent such property is insufficient, then from the property passing pursuant to Article 5.3.

In contrast to Section 7.1. which sets forth specific instructions for the payment of estate taxes, Section 7.2 gives the Trustees discretion as to the payment of other expenses, including the "expenses of administration." That provision states:

5

      7.2    <u>Expenses in Grantor's Estate</u>. After the death of Grantor, Trustee may, in Trustee's discretion, pay from the Trust Estate (prior to the funding of any trusts created as the result of Grantor's death), or otherwise provide for such portion of debts, expenses of last illness, funeral and burial, and expenses of administration (including attorneys' fees and personal representative's fees) as Trustee determines advisable after consultation with the personal representative of Grantor, if any.

In addition to taxes and estate expenses, Article 7 includes provisions pertaining to tax elections and deductions, generation-skipping tax elections, and interest on tax payments.

Lisa argues that Section 5.2(c)(ii) is unambiguous. She claims that Article 5.2 (c)(ii) allows the specific bequest to be reduced by only the following payments: (1) compensation to the Co-PRs, (2) estate taxes, and (3) the bequest to Thomas. She contends that Section 5.2(c)(ii) permits no other deductions. According to Lisa's argument, the value of her bequest is a fixed amount, according to the value of the assets at the time of Sven's death and upon the calculation of the amount of estate taxes and Co-PRs' compensation.

Lisa acknowledges that Article 7.2 gives the Co-PRs authority to "initially" use liquid assets of the trust estate to pay administrative expenses. She maintains, however, that Article 7.2 does not give the Co-PRs the authority to "change the formula" of the bequest set forth in Article 5.2(c)(ii) or to reduce her share of the bequest. Therefore, if the Co-PRs were to use the liquid assets to pay administrative expenses, Lisa argues that they would be required to "use some of the assets in the residue to fund the correct amount of the specific bequest for distribution purposes." Alternatively, she asserts that the Co-PRs may pay the administrative costs using some or all of

6

Erick's 50 percent portion of the specific bequest under Article 5.2(c)(ii), because the overall net effect would be the same.

While we agree with Lisa that the trust's language is unambiguous, we disagree with her interpretation.[4] Lisa's interpretation incorporates restrictive language into Article 5.2(c)(ii) that does not exist. While Article 5.2(c)(ii) provides that certain expenses must be paid using the trust's liquid assets, it does not prohibit the use of those assets to pay other expenses. And likewise, the residuary provision, Article 5.3, allows, but does not require the "amounts described in Article 7" to be paid before the residue passes to Erick's trust.

Interpreting Article 5.2(c)(ii) in accordance with Lisa's argument would eviscerate Article 7.2 which expressly grants discretion to the Co-PRs to pay the estate's administrative expenses, including burial/funeral costs and attorney fees, from the "Trust Estate." The "Trust Estate" includes "all of the assets transferred by Grantor or by any other person, either inter vivos or by Will, to the Trustee, and accepted by Trustee" and "all property payable to or accruing to the Trust Estate as a result of the Grantor's death, whether by Will, provisions of another trust, designation of a beneficiary of an insurance policy, annuity, pension or profit sharing plan, or otherwise." In other words, the "Trust Estate" includes the marketable securities, cash and bonds.

The trust language does not support the argument that the Co-PRs must replenish liquid trust assets that may be used to pay administrate costs of the estate. Likewise, it does not support the position that Lisa is entitled to a bequest of assets with

---

[4] And because the language of the trust provisions is unambiguous, we need not resort to canons of construction or extrinsic evidence. See In re Washington Builders Benefit Trust, 173 Wn. App. at 75; see also In re Estate of Sherry, 158 Wn. App. 69, 82, 240 P.3d 1182 (2010).

7

a value that was fixed upon Sven's death. Article 5(c)(ii) states that the remainder of liquid assets "(if any)" will be divided equally between Lisa and Erick's trust. Thus, the trust contemplates that the liquid assets could be depleted by payment of Trustee compensation, estate taxes, the bequest to Thomas, and other expenses, at the Co-PRs' discretion.

Lisa relies on RCW 11.10.010, a provision of the probate code. She also contends that as a general matter, the residue should bear the administrative expenses of an estate. See, e.g., Seattle-First National Bank v. Macomber, 32 Wn.2d 696, 701, 203 P.2d 1078 (1949) (citing a general rule that, absent a contrary provision, taxes should be paid out of the residuary estate). But she concedes that neither the abatement statue nor this general rule applies if the testamentary documents express a contrary intent. For instance, in Macomber, the court did not need to rely on the general rule because it was clear from the express provisions of the testamentary document that the grantor intended for taxes to be allocated to the residuary estate. Macomber, 32 Wn.2d at 703.[5] Here, too, the grantor's intent is evident from the language of the trust, which grants the Co-PRs discretion to pay administrative expenses from the assets of the trust as they deem "advisable."

III.

Finally, all parties request attorney fees on appeal and for the proceedings in superior court under RAP 18.1 and RCW 11.96A.150. We have discretion to award attorney fees under RCW 11.96A.150. But while we do not agree with Lisa's

---

[5] Lisa's reliance on published and unpublished out-of-state cases is not helpful. None of the cited cases involve similar testamentary language that provides for the payment of administrative expenses by an express grant discretion to a trustee. See, e.g., In re Estate of De Santi, 53 Cal. App. 2d 716, 717-18, 128 P.2d 434 (1942); In re Estate of Newell, 765 P.2d 1353 (Wyo. 1988).

interpretation of the trust, this case involves a bona fide dispute which compelled the Co-PRs to seek guidance from the court.  Lisa's appeal of the court's order cannot be characterized as frivolous.  We decline to impose attorney fees.

Affirmed.

_Mann, A.C.J._

WE CONCUR:

_Dwyer, J._      _Appelwick, C.J._