MIFFLINBURG BANK *v.* KUHN.

Opinion delivered December 17, 1923.

1. APPEAL AND ERROR—ORDER GRANTING NEW TRIAL.—Under Crawford & Moses' Dig., § 2129, an appeal may be taken to the Supreme Court from an order of the circuit court granting a new trial.

2. TRIAL—DIRECTION OF VERDICT.—In an action on notes, undisputed evidence that plaintiff bank obtained them for value before maturity, in the usual course of business, without notice of any facts tending to put the bank on notice of any defense, *held* to entitle plaintiff to a directed verdict.

3. BILLS AND NOTES—BONA FIDE PURCHASER.—An indorsee of notes paying $300 for notes of the face value of $750 may be a *bona fide* holder, as it is only where the consideration is nominal that the inadequacy thereof constitutes bad faith.

Appeal from Crittenden Circuit Court; *W. W. Bandy,* Judge; reversed.

*Cooley & Adams,* for appellant.

In a clear case of abuse of discretion in a trial court in granting a motion for new trial, this court will correct the error. 20 Enc. Proc., pp. 643-645; 94 Ark. 566; 54 Ark. 364; 98 Ark. 304. Any errors which might be ground

for a new trial must be set out in the motion for new trial. 20 Enc. Proc., p. 423; 73 Ark. 453; 101 Ark. 120; 105 Ark. 353; 108 Ark. 425; 27 Ark. 506. The motion filed contains no such ground. If reasonable minds cannot draw different conclusions from the testimony, it becomes the court's duty to direct a verdict. 104 Ark. 267; 97 Ark. 438; 103 Ark. 401; 111 Ark. 309. See also Jones, Com. on Ev., vol. 1, § 174, pp. 906-908; 8 Am. St. Rep. 855; 18 Am. St. Rep. 381; 17 Am. St. Rep. 281; 88 Ark. 510; 57 Ark. 461; 39 Ark. 413; 79 Ark. 608. Appellant was a holder of the notes for value. The burden was on the defendant to show fraud or bad faith. 139 U. S. 166; 78 C. C. A. 581; 113 Ark. 120; 104 Ark. 388. Any substantial consideration paid for the notes is sufficient to make the plaintiff a *bona fide* holder. 8 C J., pp. 508-509, § 717; 90 Ark. 93; 92 Ark. 248; 118 Ark. 229. To show bad faith, it should have been shown that the appellant had some notice of a defect or infirmity in the notes. 94 Ark. 100; 121 Ark. 171; 79 Ark. 149. Where there is nothing on the face of the paper itself to show an infirmity, the purchaser is not called upon to make inquiry concerning the execution to avert the imputation of bad faith. 8 C. J. 499, § 709; 113 Ark. 72; 61 Ark. 81; see also 148 Ark. 66.

*Caraway & Isom,* for appellee.

There was sufficient evidence to submit the issues to the jury, and this should have been done. 121 Ark. 250; 218 S. W. 843; 103 Ark. 401; 57 Ark. 461. The discount offered on the paper was in itself enough to put any one on notice of the fraudulent nature of the business and the manner of procuring the notes in suit. 121 Ark. 171. Where there is any evidence to show that the plaintiff was not an innocent purchaser, the question should be submitted to the jury. 218 S. W. 843. Trial courts have large discretion in matters of granting new trial. 94 Ark. 566; 98 Ark. 304.

HART, J. The Mifflinburg Bank, a corporation organized under the laws of the State of Pennsylvania,

brought suit in the circuit court against R. T. Kuhn, trading as R. T. Kuhn & Co., in Crittenden County, Arkansas, to recover upon four promissory notes for the sum of $187.50 each.

The notes were dated March 21, 1921, payable at the Crittenden County Bank & Trust Company of Marion, Ark., to the order of the Farmers' Medicated Stock Salt Company, and due respectively on July 1, August 1, September 1, and October 1, after date. The notes were signed "R. T. Kuhn & Co., by R. T. Kuhn," and were indorsed by the Farmers' Medicated Stock Salt Company and the Federal Stock Food Company.

John W. Lincoln, the cashier of the Mifflinburg Bank, was the principal witness for the plaintiff. According to his testimony, these four notes were discounted by his bank on March 29, 1921. The notes were indorsed by the Farmers' Medicated Stock Salt Company and the Federal Stock Food Company. The notes were assigned to the bank for value before maturity, in due course of business, without notice of any defect, infirmity or defense of any kind on the part of the maker of the notes. The Mifflinburg Bank paid $300 for the notes, and had no knowledge or notice of any fraudulent methods pursued in procuring the notes, or any notes such as these by the Farmers' Medicated Stock Salt Company or the Federal Stock Food Company. The proceeds from the sale of the notes was placed to the credit of the Federal Stock Food Company, and used by it in the ordinary course of business. No part of the notes has been paid, and the face value of the notes, with interest and protest fees, is due the bank.

On cross-examination the cashier stated that his bank had had relations with the Farmers' Medicated Stock Salt Company during the past four years, while he has been cashier of the bank. The witness did not recall any suits on hand by the bank for the collection of similar notes. He had no other notes against this defendant than those in this suit. All the notes purchased by

the bank from the Farmers' Medicated Stock Salt Company were in the usual course of business, and plaintiff, in purchasing the notes sued on, was governed largely by the financial reports concerning the maker. No officer or director of the bank is in any way interested in the Farmers' Medicated Stock Salt Company or in the Federal Stock Food Company. None of these two last named companies are interested financially in the plaintiff bank. The funds arising from the sale of the notes sued on to the bank were immediately used by the Federal Stock Food Company in the ordinary course of its business.

C. H. Gould, manager of the Federal Stock Food Company and the Farmers' Medicated Stock Salt Company, was a witness for the plaintiff. According to his testimony, the Farmers' Medicated Stock Salt Company received an order for $750 worth of its products from the defendant on March 21, 1921, and the notes sued on were given for the purchase price. Shipment was made to the defendant in the regular way on March 28, 1921, and a bill of lading was sent to him on the same day. On the same day each of the notes sued on was transferred and assigned for value to the plaintiff bank. There was no knowledge on the part of the plaintiff or its agents of any defense to the notes. No fraudulent methods were used by the Farmers' Medicated Stock Salt Company in taking orders and notes. The goods were sold successfully by other agents of the Farmers' Medicated Stock Salt Company.

On cross-examination he stated that the notes were assigned in order to obtain current funds. The plaintiff has been accepting similar notes from the Farmers' Medicated Stock Salt Company for three or four years. The notes sued on is the first instance of any litigation in the collection of the notes assigned by the Farmers' Medicated Stock Salt Company to the plaintiff bank. The witness had been the manager of the Farmers' Medicated Stock Salt Company and the Federal Stock Food

Company since December, 1921. He owns no interest or stock in the Farmers' Medicated Stock Salt Company or the Federal Stock Food Company. The former company manufactures stock salt, composed of salt, copperas, epsom salts, and charcoal, and the goods are being successfully sold over a large part of the United States. The notes were sold to obtain funds to meet current expenses in running the business.

According to the testimony of the defendant, when the feed arrived the sacks were all burst open, and there contained a direction in them to the effect that, unless the product was fed with blood meal, flax meal, bone meal, etc., the indemnity agreement of the plaintiff would not be available. The defendant never took the shipment out of the car, and had nothing to do with it, because the product did not come up to the representations made by the seller. His testimony was corroborated by that of an employee. The defendant offered to send the product back, and the company refused to take it.

On motion of the plaintiff, the court instructed the jury to find for it in the sum of $768.60, with interest from the maturity of the notes sued on. Judgment was entered from the verdict for the principal, interest and protest fees, amounting in the aggregate to the sum of $832.71. on the same day, which was the 5th of December, 1922.

On the 7th day of December, 1922, the defendant filed a motion for a new trial, which was granted by the court on the same day, and the judgment in favor of the plaintiff was set aside.

The plaintiff then made a motion to set aside the judgment granting the defendant a new trial, and the court refused to grant the same. Whereupon the plaintiff prayed an appeal to the Supreme Court, and filed its notice of appeal and stipulations for a judgment absolute, as required by subdivision 2 of § 2129 of Crawford & Moses' Digest.

This section of the Digest makes the order of the circuit court granting a new trial a final judgment, from which an appeal to the Supreme Court may be taken, upon compliance with the statute. *First National Bank of Newark* v. *People's National Bank of Springfield,* 97 Ark. 15; *Bush* v. *Barksdale,* 122 Ark. 262, and *Etcherson* v. *Hamil,* 131 Ark. 87.

In construing this statute, in *Johnson* v. *Mantooth,* 120 Ark. 99, this court held that the action of the trial court in granting a new trial on the ground that the verdict is not supported by the evidence, is not reviewable on appeal, where it appears that there is a substantial conflict in the testimony.

In the application of the rule there announced to the case at bar, the sole issue is whether or not the court erred in setting aside its first judgment, based on an instructed verdict in favor of the plaintiff, and granting the defendant a new trial.

This presents the issue of whether the plaintiff is entitled to a directed verdict in its favor upon the testimony presented in the record. We are of the opinion that the undisputed evidence shows that the plaintiff was entitled to a directed verdict. No part of the notes had been paid, and it is established by the testimony of the cashier of the bank and the manager of the Farmers' Medicated Stock Salt Company, to which the notes were given, that the bank paid $300 for the four notes, and that the notes were transferred to it before maturity in the usual course of business. Both of these witnesses testified that the bank had no notice of any facts tending to put it on notice that the maker of the notes had any defense thereto.

It appears from the record that the Farmers' Medicated Stock Salt Company and the Federal Stock Food Company were the same, and that they had been doing business with the bank for three or four years. They would discount the notes with the bank which they received from customers to whom they had sold their

products.    The money received thereby would be used in conducting the current business of the company.    There were no suits on the notes or other facts which would lead the bank to believe that the makers of the notes had any defense to them.

It is next contended that the fact that the consideration for the assignment of the notes is less than their face value shows that the purchase of the notes by the bank was in bad faith.    This court has held that, where there has been a substantial price paid by the purchaser for a negotiable instrument, and he is in other respects a *bona fide* holder thereof, then the fact that it was purchased at a sum less than its face value is not alone sufficient to make him a purchaser in bad faith.    *Hogg* v. *Thurman,* 90 Ark. 93; 17 Ann. Cas. 383, and case note. It is only where the consideration is nominal that the inadequacy of the consideration itself constitutes bad faith on the part of the purchaser.    In the case at bar the face value of the notes amounted to $750, and the bank paid $300 for them.    No other fact appearing tending to show bad faith on the part of the bank in purchasing the notes, it follows that the court erred in setting aside a directed verdict in its favor.    There are no facts or circumstances in this case tending to impute bad faith on the part of the bank in the purchase of the notes, as was the case in *Holland Banking Co.* v. *Booth,* 121 Ark. 171.

Therefore the court erred in granting a new trial to the defendant, and the judgment will be reentered here in favor of the plaintiff in the sum of $832.71, with interest from the date of said judgment.    It is so ordered.