IN THE MATTER OF THE ESTATE OF
JAMES W. GLOVER, DECEASED.

No. 4155.

MAY 4, 1962.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, LEWIS
AND MIZUHA, JJ.

OPINION OF THE COURT BY CASSIDY, J.

This is an original submission under R.L.H. 1955, §
227-1, on the agreed facts summarized hereunder. The
controversy submitted is between the widow of the dece-
dent James W. Glover and the executor of his estate with
the primary question in difference being whether the
widow's dower interest in personalty of the estate is to
be determined before or after the deduction of the federal
estate tax.

The decedent executed a will on April 5, 1951, and
later in the same year executed a codicil thereto. Sub-
sequently he married Barbara Cox. He died in 1957 with-
out having made any testamentary provision for her. She
survived him. The decedent was also survived by two
children from a previous marriage. The children are the
principal beneficiaries under decedent's will. The will with
the codicil has been admitted to probate in proceedings
now pending in the First Circuit Court. Although not
required to do so under the applicable statute[1] the widow

---

[1] R.L.H. 1955, § 319-14.

filed an election to take dower in decedent's estate.

Decedent left an estate consisting of personal property appraised at $2,028,639.34 and real property appraised at $802,068.00. It is alleged in the agreed statement of facts that the widow's dower interest in the personalty of the estate will qualify for the marital deduction allowable for federal estate tax purposes but that the amount of the deduction cannot be ascertained and the final determination of the tax cannot be made until it is decided whether the dower interest is to be admeasured before or after deducting the federal estate tax.[2]

A widow's dower allowance is provided for and controlled by R.L.H. 1955, § 319-1, reading in pertinent part as follows:

"*Dower.* Every woman shall be endowed of one-third part of all the lands owned by her husband at any time during marriage, in fee simple, or in freehold, unless she is lawfully barred thereof. She shall also be entitled, by way of dower, to an absolute property in the one-third part of all his remaining property owned by him at the date of his death, after the payment of all his just debts. * * *"

The federal estate tax is imposed by the provisions of § 2001 of the Int. Rev. Code of 1954 (Title 26, U.S.C. § 2001) reading:

"A tax computed in accordance with the following table is hereby imposed on the transfer of the taxable

---

[2]The Internal Revenue Service increased the valuation of the personal property from $2,028,639.34 to $2,147,532.48 and the valuation of the real property from $802,068.00 to $1,428,274.00. Debts and expenses of the estate, exclusive of the federal estate tax, were $976,679.38. The federal estate tax as originally determined was $502,146.01. With the adjustment in valuation made by the Internal Revenue Service the tax was increased to $904,437.84. It is alleged that the dower interest in the personal property computed for marital deduction purposes in connection with this tax was admeasured after the federal estate tax in the sum of $87,091.75. The value of the widow's dower interest in the real property does not appear.

estate, determined as provided in section 2051, of every decedent, citizen or resident of the United States dying after the date of enactment of this title."

By § 2034 of the Code it is provided:

"The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower or curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy."

Section 2056[3] of the Code reads in pertinent part:

"(a) *Allowance of marital deduction.*

"For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

"(b) *Limitation in the case of life estate or other terminable interest."*

\* \* \*

"(4) *Valuation of interest passing to surviving spouse.*

"In determining for purposes of subsection (a) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section—

"(A) there shall be taken into account the effect which the tax imposed by section

---

[3]The provisions of § 2056 were added as a new subsection [§§ (e)] to § 812 of the Int. Rev. Code of 1939 by the Revenue Act of 1948. (62 Stat. at L. 117.)

2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest; * * *."

We are not directly concerned with the widow's dower in decedent's real property. In this jurisdiction dower in real property is a life estate only. *Valentin* v. *Brunette,* 26 Haw. 417, 421. As such, it cannot qualify under the Code for the marital deduction. Section 2056 (b) (1). The Code also provides that the aggregate of the marital deductions shall not exceed 50 percent of the value of the adjusted gross estate. Section 2056 (c) (1).

The marital deduction was written into the Internal Revenue Code in 1948 in order to equalize, as nearly as possible, estate and gift tax liability between community property states and common law states. Senate Rep. No. 1013, 80th Cong., 2d Sess. (1948), 1948 U.S. Code Cong. Serv. Vol. 2, pp. 1188-1191; S. Misc. Rep. II, 80th Cong., 2d Sess. (1948), No. 1055, p. 5.

The principal contention made on behalf of the widow in this case is summarized in the opening brief, as follows:

"The marital deduction arose as a device to equalize estate taxes in common law jurisdictions with community property jurisdictions. If the widow's dower is compelled to bear the burden of estate taxes, the purpose of the marital deduction is defeated. There is a public policy rooted in the statutes and common law of Hawaii for the protection of dower from death taxes. In the absence of statute specifically to the contrary, the marital deduction must inure to the benefit of the widow. Since the widow's dower generates no tax, it cannot equitably be called upon to bear any burden of the tax."

Since the incorporation of the marital deduction into the federal law in 1948 approximately a dozen courts have had occasion to directly pass on the issue presented in

this case. There is a definite split in the results reached. In numbers, the authorities seem to be almost evenly divided. To a very limited extent this difference in results may be laid to differences in the applicable state statutory provisions governing election against the will or defining the allowance to a widow for whom the husband makes no testamentary disposition. However, the real clash in the conflicting holdings is found in the difference in the attitudes taken by the respective courts on the part the marital deduction provisions of the federal law play in controlling the widow's distributive share under state law.

In support of the widow's position that dower in personalty should be distributed to her free of any impact of the federal estate tax or at least without deduction for the portion of the tax in respect to which the estate receives the benefit of the marital deduction, are cited: *In re Peters' Will,* Surr. Ct., 204 Misc. 333, 88 N.Y.S.2d 142 (*aff'd,* App. Div., 89 N.Y.S.2d 651); *In re Vitale's Will,* Surr. Ct., 118 N.Y.S.2d 773; *Lincoln Bank & Trust Co.* v. *Huber,* Ky., 240 S.W.2d 89; *In re Rosenfeld's Estate,* 376 Pa. 42, 101 A.2d 684; *Pitts* v. *Hamrick,* 4 Cir., 228 F.2d 486; *Case* v. *Roebling,* 42 N.J. Super. 545, 127 A.2d 409; *In re Burnett's Estate,* 50 N.J. Super. 482, 142 A.2d 695. To these should be added the more recent decisions of *Hammond* v. *Wheeler,* Mo., 347 S.W.2d 884, and *In re Barnhart's Estate,* 102 N.H. 519, 162 A.2d 168.

The decision in each of the cited cases is controlled or to a great extent influenced by the concern of the court rendering it to give effect to the intent of Congress in enacting the marital deduction to place estates in common law jurisdictions on a parity for tax purposes with estates in jurisdictions having community property law. This basic theme of the authorities supporting the widow's position is expressed in *In re Rosenfeld's Estate, supra,* at p. 685, as follows:

"The marital deduction provision in the United States Revenue Act of 1948, Section 812(e), Internal Revenue Code, 26 U.S.C.A. § 812(e), was passed to equalize the federal estate tax between residents of common law states and residents of community property states. * * *

"The marital deduction statute endeavors to accomplish taxwise in common law states what is provided by the civil law in the community property states. * * *"

* * *

"* * * It would be grossly inequitable to permit exceptant [one of the testator's children] to share in the marital deduction exemption provided specifically and solely for the surviving spouse. To do so would defeat the intent of the federal statute. It follows that no portion of the federal estate tax is chargeable to the widow."

One of the earliest cases if not the first case on the treatment of the federal estate tax in determining a widow's statutory share decided after adoption of the marital deduction is *In re Peters' Will, supra,* in which, at p. 147, it is stated:

"All of the foregoing cases were decided before the enactment of the U.S. Revenue Act of 1948. Section 812(e), Internal Revenue Code, 26 U.S.C.A. § 812(e), which has introduced a new legal concept referred to as a 'marital deduction' cannot be overlooked in this connection. Its purpose is to allow a surviving spouse to take a certain portion of the estate free of Federal estate taxes. * * *"

* * *

"I believe that the marital deduction now allowed by Section 812(e) Internal Revenue Code is substantially in the same category as the charitable deduction

allowed by Section 812(d) of the Code, which immediately precedes it, and that just as a charitable bequest is free of Federal estate taxes so is a widow's intestate share except for certain limitations not applicable here."

The leading or at least the most cited case supporting the widow's contention is *Lincoln Bank & Trust Co. v. Huber, supra.* In it, after reviewing Kentucky precedents on equitable apportionment of estate taxes and quoting from *In re Peters' Will* as above, the court concludes, at p. 91:

"It appears to us that the apparent purpose behind the enactment of the U.S. Code above was to equalize the estate tax in non-community property states, with that of community property states, and to prepare the way for elimination from the tax burden all those whose legacies or allotments do not create or add to the tax.

"Under the authority of In re Peters above, we conclude that if the marital allotment is a deductible item before arriving at the net taxable estate, and since that item does not add to the tax, it can not be burdened with any portion of the federal estate tax. The surviving spouse, therefore, should receive her share undiminished by any federal estate tax."

*In re Burnett's Estate, supra,* can be taken as representative of the remaining authorities cited for the widow. Full support for the argument made on her behalf is found in the exposition of the New Jersey court, at p. 706, as follows:

"The legislative history of the marital deduction statute indicates a fixed Congressional purpose to give surviving spouses in common law states the advantages otherwise accruing only to those favored by local community property laws. This can only be accomplished

in this case by allowing Dr. Burnett the full benefit of the marital deduction, as the Congress intended. For, had Cora Timken Burnett died in a community property state, in the usual case, one-half of her substantial estate would have passed to Dr. Burnett wholly outside both her probate and taxable estate. Under her will, Dr. Burnett takes substantially less than one-half of his wife's estate, and the Congressional intent—to equalize estate taxation between community property and common law states—can be effectuated in this case only by recognizing that Dr. Burnett's share is deductible for estate tax purposes and hence should bear no portion of the tax which is generated solely by the other shares of the estate.

"The contrary contentions, which reduce the marital deduction by requiring Dr. Burnett to assume a part of a tax burden not attributable to or created by his share of the estate, leaves him with a much smaller net share of the estate left to him by will than he would have taken if this estate had been community property. Any doctrine which charges the deductible marital share of an estate with federal taxes thwarts the intent of Congress by destroying parity between common law and community property."

However, we are unable to agree with the reasoning or holding of these cases. The proposition that the purpose and intent of Congress in establishing the marital deduction is the decisive factor in determining the issue is not acceptable to us. On the contrary, we find the reasoning of the hereinafter considered authorities which reject that proposition convincing.

In the first place, as the authorities we are about to consider point out, the conclusion reached in the *Huber* and other cases cited for the widow that, by reason of the marital deduction, the widow's dower in personalty

does not create any federal estate tax, is insupportable.

The general nature of the federal estate tax is stated in *Moorman* v. *Moorman,* 340 Mich. 636, 66 N.W.2d 248, at p. 249, to be as follows:

"The Federal estate tax is an excise tax upon the transfer of an estate upon death of the owner and is not a tax upon succession and receipts of benefits under the law or will. It was created by Congress as death duties as distinguished from a legacy or succession tax and imposes the tax not on the interest to which the legatees and devisees succeed to on death but upon the interest which ceased by reason of the death."

As stated in *Seattle-First Nat. Bank* v. *Macomber,* 32 Wash.2d 696, 203 P.2d 1078, at p. 1081:

"Before proceeding further, it might be advantageous to inquire into the nature of an estate tax. An estate tax is a tax upon the transfer of property by the decedent upon his death, and is to be distinguished from an inheritance or succession tax, which is a tax upon the taking of property by a beneficiary or distributee. The estate tax is upon the entire estate, payable as an expense of administration, and not upon the particular devise, bequest, or distributive share of the individual beneficiary. See 28 Am.Jur. 8, Inheritance, Estate and Gift Taxes, §§ 2 to 5."

In computing the value of the interest of the surviving spouse for purposes of the marital deduction it is necessary, by reason of the provisions of § 2056 (b) (4) of the Internal Revenue Code, above quoted, to take into account any part of the federal estate tax which falls upon the interest of the surviving spouse. Consequently, as is stated in *In re Uihlien's Will,* 264 Wis. 362, 59 N.W.2d 641, at p. 645: "This provision of the federal estate tax statutes thus would seem to expressly negative any intent on the part of Congress that the widow's share

578

of the personal estate in the instant case should entirely escape the impact of all of the federal estate tax."

In the second place, and more important, the intent of Congress in adopting the marital deduction should not be a determinative factor in deciding the extent of a widow's dower allowance under state law. Pertinent in this connection is the statement of the Court in *Riggs* v. *Del Drago,* 317 U.S. 95, at pp. 97-98:

"We are of opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole, and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax; accordingly, § 124 is not in conflict with the federal estate tax law. This conclusion is based upon the provisions of the Revenue Act of 1916, 39 Stat. 756, and subsequent acts, their legislative history and their administrative interpretation.

"In the Act of 1916 Congress turned from the previous century's inheritance tax upon the receipt of property by survivors (see *Knowlton* v. *Moore,* 178 U.S. 41; *Scholey* v. *Rew,* 23 Wall. 331) to an estate tax upon the transmission of a statutory 'net estate' by a decedent. That act directed payment by the executor in the first instance, § 207, but provided also for payment in the event that he failed to pay, § 208. It did not undertake in any manner to specify who was to bear the burden of the tax. Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that state law should determine the ultimate thrust of the tax."

We are impressed with the thoroughness of analysis and the soundness of the reasoning of the Wisconsin

court in *In re Uihlien's Will, supra,* wherein at p. 646 it is said:

> "The reasons advanced by the Kentucky court for its decision in Lincoln Bank & Trust Co. v. Huber, supra, are demonstrably untenable. While the motivating purpose of Congress in creating the marital deduction was undoubtedly to give non-community property states the same estate tax advantages that community property states have, Congress made it very clear by the provisions of 812(e) (1) (E) of the Internal Revenue Code that a spouse's share qualifying for marital deduction might still be subject to federal estate tax. The Treasury Regulations issued to implement such section are proof of the fact that the rule of Riggs v. Del Drago, supra, still stands. In other words, Congress expressly left the question, of whether a spouse's share of an estate qualifying for marital deduction should be subject to federal estate tax, to the individual states to determine for themselves. The statement quoted from the New York surrogate court decision [*In re Peters' Will, supra*], implying that all charitable bequests are exempt from the burdens of federal estate tax, is simply not so in the absence of a state apportionment statute so providing. Whether charitable bequests are exempt from the burdens of federal estate tax is dependent upon whether the bequests take the form of a specific legacy or a share in the residue. If a bequest to charity is payable from the residue, it bears the impact of the federal estate tax. Young Men's Christian Association of Columbus, Ohio v. Davis, 1924, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558."

In the *Uihlien* case it was held that the widow's share upon election to take against the will was to be computed after the payment of the federal estate tax. In case of

such an election the method of computing the share of the widow in her husband's estate was governed by a statute providing in material part: "That when he shall have died testate the share of personal estate which she may so take shall not exceed the one-third part of his net personal estate." The opinion states, at p. 648: "It seems to us that the words *'net estate'* of our statute are clear and unambiguous and are subject to no other interpretation than that they mean that part of the estate which remains after payment of all charges against the entire estate. Federal estate taxes stand in no different category than do debts or administration expenses."

Another comparable decision is *Wachovia Bank & Trust Co.* v. *Green,* 236 N.C. 654, 73 S.E.2d 879. It involved a state statute which allowed a renouncing widow the same rights in her husband's estate as if he had died intestate. The deceased left no child and the distribution was governed by a statute (G.S. § 28-149) providing: " 'If there is no child nor legal representative of a deceased child, then one-half of the estate shall be allotted to the widow, and the residue be distributed equally to every of the next of kin of the intestate.' " Referring to another statutory provision which it was said "directs the personal representative, in case of intestacy, after payment of debts in the order prescribed by G.S. § 28-105, to distribute the surplus in the manner set out in G.S. § 28-149," the court held that the distributive share of the widow was to be made from the surplus of the estate remaining after the payment of the decedent's debts, and that the word "debts" included the federal estate tax. In rejecting the basic theory underlying the precedents cited for the widow in our case, the North Carolina court states, at p. 883:

"However, the doctrine of marital community of property is not recognized in North Carolina, nor do

we have any statute which has the effect of bringing the administration of estates and the method of distribution into conformity with that principle. The federal tax statute as amended which makes provision for marital deduction does not have the effect of controlling the state statutes as to the administration of decedent's estate. Power in this respect has not been granted to the Federal Government, and the right of state control is reserved (10th Amendment). The Supreme Court of the United States has repeatedly declared the Federal Government is concerned only with the collection of the tax, leaving it to the states to determine how the burden shall be distributed and upon whom the impact shall fall."

In *Guaranty National Bank* v. *Mitchell,* W. Va., 111 S.E.2d 494, the court refused to recognize the widow's contention that the marital deduction affected the determination of her distributive share and held that the renouncing widow took her share of the decedent's personal estate after the payment of federal estate taxes under a statutory provision which gave her, upon election against the will, one-third of the personal estate "after payment of funeral expenses, charges of administration, and debts." Citing *Riggs* v. *Del Drago, supra,* and other cases, the West Virginia court states at p. 496 of its opinion: "These and many other cases make it clear that the federal estate tax imposed is a tax on the right to transfer property, not a tax on the right to receive property, and that the question of the thrust or impact of the tax is a question of state law, and is computed according to the law of the individual state." And in rejecting the argument that the federal estate tax is not a "debt" within the meaning of the applicable statute, the court states at p. 497:

"Though the word 'debt' may be given a different meaning in different context, insofar as here material,

we think its application was correctly circumscribed by this Court in Central Trust Company v. James, supra, in this language: 'The quoted statute respecting deductions of "debts and encumbrances" is broad and inclusive. The language is of ample breadth to include claims and liens of whatever character and whenever arising, whether under existent law or future enactments. Where an authorization of deduction, such as the one before us, is of sufficient breadth to include all proper charges it would be vain to require particularization.' It may be noticed that the statute, after authorizing the payment 'of debts due the United States', and 'debts' due the state, also authorizes the payment of 'taxes' without any restriction as to the type of tax, or how assessed, 'in advance of the determination of other claims.' Whether, however, the federal estate tax be considered a 'debt', a 'claim', or an 'administrative expense', the result is the same. It must, under the authorities cited, be deducted from the whole personal estate of inheritance, before computation of the distributive share of the widow, since no state statute requires a different result."

By Ohio law, a widow has an election to take under the will or under the statute of descent and distribution. In the event she renounces the will, it is provided that "such spouse shall take not to exceed one-half of the net estate." The exact share of the net estate depends on the number of children surviving. In *Campbell* v. *Lloyd,* 162 Ohio St. 203, 122 N.E.2d 695, it was held that, notwithstanding the marital deduction, the net estate was to be determined after the payment of federal estate taxes, the court stating at p. 698:

"As to personal property, the statutes of this state require an executor or an administrator to pay the debts or make provision for their payment before dis-

tribution of such personal property can be made. See Sections 10509-121, 10509-181 and 10509-182, General Code. * * *

"Under the words of Section 10503-4, General Code, applicable in the instant case, the widow will be entitled to none of the personal property of her husband until it is to *'be distributed.'* At that time, its amount will necessarily be diminished by the payment 'like other debts' or provision for such payment of the federal tax on his estate. Thus, the statute gives her only one-half of that diminished amount. If therefore the personal property of the estate is sufficient to pay all charges against the estate, it would obviously be inconsistent with that statute to give her more than one-half of that diminished amount of personal property."

In rendering this decision the Ohio Supreme Court reversed its prior ruling in *Miller* v. *Hammond,* 156 Ohio St. 475, 104 N.E.2d 9, in which former case it had held that by reason of the marital deduction and in exercise of the equity powers conferred on it by statute, the probate court should award the distributable share of a widow who renounced her husband's will without deduction for any portion of the federal estate tax which did not result directly from the passing of her portion of the estate. In the *Miller* decision the only authority cited on the issue was *Lincoln Bank & Trust Co.* v. *Huber, supra.* It was held to be "particularly in point."

Also supporting the executor's stand in this case are *In re Rettenmeyer's Estate,* Okla., 345 P.2d 872; *Northern Trust Co.* v. *Wilson,* 344 Ill. App. 508, 101 N.E.2d 604; *Old Colony Trust Company* v. *McGowan,* 156 Me. 138, 163 A.2d 538.

As has been stated, it is our view that the reasoning of *In re Uihlien's Will, supra,* and the other authorities

above referred to which hold against crediting the surviving spouse's distributable share with the amount of federal estate tax savings made by application of the marital deduction is sound. We discern no distinguishing features of moment between those cases and the one at bar. We think it apparent, without detailed analysis, that the state statutes pertaining to the determination of a widow's statutory share in the personal property of her husband's estate involved in those decisions are, in substance and effect, comparable to R.L.H. 1955, § 319-1. Whether the statutory allowance in personalty for an unaccommodated or renouncing widow is given to her "by way of dower," as in our case, or is meted out to her "as if her husband had died intestate," as is typical of the authorities under consideration, the widow takes her specified fractional share from the personal property remaining in the hands of the executor or administrator for distribution at the close of administration. There are differences in terminology, to be sure, and other technical differences may be argued to exist between the two types of statutory allowance, but the practical end result under each is the same, in that under each the widow's distributive share in personalty is made from the net estate as finally determined and available for distribution after all obligations of the estate have been discharged. Further, any argument against the applicability of *In re Uihlien's Will* and the comparable authorities reviewed because of differences between § 319-1 and the statutory provisions involved in those cases is, we think, completely resolved by the two hereunder considered decisions of this court ruling, when considered together, that an estate's administration expenses are to be deducted before allotment of the widow's dower in personalty and that the federal estate tax is an expense of administration.

In *Notley* v. *Brown,* 16 Haw. 575, the question before

the court was whether expenses of administration should be deducted before the widow's share is apportioned out of her husband's estate. The statute controlling the widow's dower allowance then read, as to personalty, that "she shall also be entitled, by way of dower, to an absolute property in the one-third part of all his movable effects, in possession, or reducible to possession, at the time of his death, after the payment of all his just debts." R.L.H. 1905, § 2271. The court held that administration expenses should be deducted before the widow's dower in personalty is apportioned, stating at pp. 576-577:

"The statute in question is a statute of dower and not of descent. *Carter* v. *Carter*, 10 Haw. 687. The 'debts' referred to in the statute do not include any claims against the estate arising after decedent's death, such as funeral charges, expenses of administration and the like. *Schouler on Executors and Administrators*, Secs. 421-426. The question at issue is not so much whether debts include expenses of administration, as it is whether the widow gets her share of the personalty only after the payment of the debts or after the payment of the expenses of administration and the payment of debts.

"In the absence of any statute in this Territory settling the priority of payment of claims against estates of decedents (*Grace* v. *Smith*, 14 Haw. 144), the rule at common law will be followed, which is that expenses of administration take precedence over debts of decedent. *Schouler on Executors and Administrators*, Sec. 423; 4 Bacon's Abridgement, 105; 2 Williams on Executors, 988. Under that rule the expenses of administration must be paid before the debts, and as the widow is not entitled to her share until after the 'payment of all just debts,' the payment of which debts is subject to the payment of expenses of

administration, there is no error in that part of the decree appealed from.

"One of the objects of requiring the probate of wills and the administering of estate is to provide for the due classification and adjustment of all claims and debts against estates. Until an estate is probated, which of necessity involves expenses of administration as an incident thereto, how can it be known with certainty that all just debts have been paid, after which only is the widow entitled to her share in the personalty? *A widow is only entitled to her share in the personalty after the payment of expenses of administration and after the payment of all just debts of the decedent.*" (Emphasis added.)

The issue in *Estate of Dillingham*, 25 Haw. 129, was how the federal estate tax should be classified in determining the valuation of a residuary bequest for territorial inheritance tax purposes. In holding that the federal estate tax is an expense of administration, the court stated at pp. 133-134:

"\* \* \* The tax [federal estate tax] is to be paid by the executor out of the estate before distribution (Sec. 207) and there is no apportionment of it among the various devisees or legatees.

"From the foregoing provisions of the federal estate tax act it seems clear that the tax constitutes a charge upon the whole estate (less the specific deductions allowed) to be paid by the executor out of the estate and is a tax upon the power to transmit or the transmission from the dead to the living and is not a tax upon legacies to be admeasured by the value of such legacies.

"*We think that the amount necessarly expended in payment of the federal tax constitutes an expense of the estate as much so as any expense of administration*

and can in no sense be said to have passed to the residuary legatee and is therefore to be deducted before computing the inheritance tax due upon such legacy." (Emphasis added.) [4]

It is contended that neither of these cases pertained to the issue of how federal estate taxes shall be considered in relation to dower, that they were decided long before the advent of the marital deduction and that they therefore are not in point. We do not agree with the contention. The specific point determined in each case was deliberately passed on and was essential to the result reached by the court in rendering its decision. We have no hesitancy in accepting the two rulings as applicable in this case. As has been indicated we do not agree with the concept that the subsequent amendment to the federal tax law creating the marital deduction could or did affect the import of these rulings.

In *Northern Trust Co.* v. *Wilson, supra,* the state statute under consideration provided that the renouncing widow was entitled to her share of the testator's estate "after payment of all just claims." In a prior decision, *First Nat. Bank of Chicago* v. *Hart*, 383 Ill. 489, 50 N.E.2d 461, involving the incidence of state inheritance taxes, the Illinois court had held that the federal estate tax was to be considered an item of expense, such as debts, funeral expenses and the like. In the principal case it was contended, as here, that the prior ruling was inapplicable in determining the effect of the marital deduction on the widow's allowance. The disposition by the Illinois court of the contention applies to the comparable contention made here. The court stated, at p. 607:

---

[4] Comparison of the emphasized portion of the opinion with the New Hampshire court's statement, "Nor are federal estate taxes considered to be 'expenses of administration' in this state," at p. 171 of *In re Barnhart's Estate, supra,* readily demonstrates that the *Barnhart* case is inapposite.

"It will be observed that [in the *Hart* case] the court treated the Federal estate tax as an 'item of expense, such as debts, funeral expenses, and the like.' Counsel for the widow argues that the statement quoted must be considered *obiter dictum,* because it was not necessary for the court to so declare, since that particular question was not before the court. In this connection it may be well to bear in mind what our Supreme Court said on the subject of *dictum* in Scovill Mfg. Co. v. Cassidy, 275 Ill. 462, at page 470, 114 N.E. 181, at page 185: 'We do not think the rule laid down in this last case upon the question here involved was *dictum*; but, even if it was, *it was the expression of opinion upon a point in a case deliberately passed upon by the court * *.'* (Italics ours.)

"Since the Federal estate tax is to be considered as an item of expense, such as debts, funeral expenses, and the like, it comes within the classification of claims under section 202, and therefore, it necessarily follows that the widow's share under section 16 of the Probate Act is subject to the 'payment of all just claims.' "

A secondary argument is advanced on the theory that the doctrine of equitable apportionment should shield dower in personalty from the impact of the federal estate tax. In the summary of this argument it is contended for the widow:

"Equitable apportionment, whether compelling non-probate assets to contribute or exonerating dower, remains one doctrine and must be accepted by this court in its entirety or not at all. The widow's dower in personalty under Hawaii statutes passes outside of probate and bears only the tax which it generates. The administrative burdens of equitable apportionment are not a reason of denying justice. Justice cannot compel the widow's dower to contribute to a tax which it does not generate."

Reliance is placed primarily on the Kentucky decisions of *Hampton's Adm'rs* v. *Hampton,* 188 Ky. 199, 221 S.W. 496; *Martin* v. *Martin's Adm'r,* 283 Ky. 513, 142 S.W.2d 164; and *Lincoln Bank & Trust Co.* v. *Huber, supra.* Other decisions cited are: *Carpenter* v. *Carpenter,* 364 Mo. 782, 267 S.W.2d 632; *In re Gallagher's Will,* 57 N.M. 112, 255 P.2d 317; *Pearcy* v. *Citizens Bank & Trust Co. of Bloomington,* App. Ct., 121 Ind. 136, 96 N.E.2d 918; *Wilmington Trust Co.* v. *Copeland,* Del., 94 A.2d 703; *Regents of the University System* v. *Trust Co. of Georgia,* 194 Ga. 255, 21 S.E.2d 691; *McDougall* v. *Central Nat. Bank of Cleveland,* 157 Ohio St. 45, 104 N.E.2d 441.

The argument is but an extension of the principal contention of the widow that she, and not the estate, should receive the benefit of the marital deduction in order to effectuate congressional intent. It should be implicit, we think, from what we have said heretofore in this opinion, that we do not deem the argument plausible. Our rejection of *Lincoln Bank & Trust Co.* v. *Huber, supra,* attests to that. And it might be observed here that with Ohio's abandoning its former position under *Miller* v. *Hammond, supra,* Kentucky seems to stand somewhat alone in applying, without aid of statute, equitable apportionment to relieve the widow from the impact of the federal estate tax. In that connection it is stated in *Thompson* v. *Wiseman,* 10 Cir., 233 F.2d 734, at pp. 738-739:

"* * * Furthermore, all but two of the cases holding that the wife takes free of federal estate taxes and that her share is calculated prior to reduction by federal taxes were under statutes specifically providing for an 'equitable prorationing' of the burden among the beneficiaries of the estate. Under such laws the rationale for the holding has been that since the wife's share did not add any taxes an equitable prorationing

of the taxes would leave her interest free of such taxes. In Lincoln Bank & Trust Co. v. Huber, Ky. 1951, 240 S.W.2d 89, the court relied upon a long established judicially evolved equitable proration rule. The other case, Miller v. Hammond, 1952, 156 Ohio St. 475, 104 N.E.2d 9, has since been overruled by the Supreme Court of Ohio in Campbell v. Lloyd, 1954, 162 Ohio St. 203, 122 N.E.2d 695. In all of the cases, except those discussed above, where there was no equitable apportionment statute it was held that the wife's share is calculated after deduction of federal estate taxes, even though she took against the will."

Application of the doctrine of equitable apportionment to ease or redistribute the burden of the federal estate tax appears by the authorities generally to be confined to the situation where a portion of the estate tax has been assessed on or for the passing of interests in nonprobate assets, such as property in which the decedent was a joint owner, property held to have been given by the decedent as a gift in contemplation of death, or property in which the decedent had an unrelinquished power of appointment. 28 Am. Jur. *Inheritance, Estate, and Gift Taxes* § 473, pp. 343-344, and § 481, pp. 348-349. No property of that nature is included in the taxable estate in this case. We do not agree with the contention that in this jurisdiction "dower in personalty passes outside of probate." Dower in personalty, like dower in realty, is an estate arising out of the marriage relation, rather than an estate of inheritance (*Carter* v. *Carter,* 10 Haw. 687), but, whatever may be said respecting the limitation of the fiduciary's interest in and control of real property in which the widow has her right of dower, as we have indicated above, there can be no question but that in this jurisdiction all of the personal property of the decedent constitutes assets of the probate estate.

Further, there is a split in the authorities on whether, in the absence of statute, equitable apportionment is under any circumstances applicable to federal estate taxes. See 37 A.L.R.2d, 169, at 171 *et seq.* Those jurisdictions which apply equitable apportionment without statutory authority appear to be in a minority and, as stated above, the cases in which equitable apportionment is sanctioned usually involve taxation attributable to non-probate assets. With the exception of the Kentucky decisions, the cases cited by the widow demonstrate both points.

In *In re Gallagher's Will, supra,* to which the note in 37 A.L.R.2d, above referred to, is appended, it is stated, at p. 326:

> "In recent years a number of jurisdictions have adopted the so-called minority rule, to wit: Indiana, Rhode Island, Louisiana, Georgia, Ohio and Florida. These states now declare the general rule that the residuary estate shall be liable for the payment of the federal estate tax, in the absence of other provision by the testator, or apportionment statute, has no application to non-testamentary property or non-probate assets."

In *Carpenter* v. *Carpenter,* the tax was attributable to the value of an annuity payable to decedent's sons. In *Pearcy* v. *Citizens Bank & Trust Co. of Bloomington* it was on insurance proceeds, property in joint tenancy and property in tenancy by the entirety. *Wilmington Trust Co.* v. *Copeland* involved an inter vivos insurance trust for the benefit of decedent's sons. In *Regents of the University System* v. *Trust Co. of Georgia* there was a proration of taxes between a surviving widow's estate and her predeceasing husband's estate on property under trust created by the husband with power of appointment given to and exercised by the widow in her will.

In the last case cited, *McDougall* v. *Central Nat. Bank*

*of Cleveland,* apportionment was made for the portion of the federal estate tax attributable to property passing under an inter vivos trust created by the decedent. That the apportionment was allowed only because the trust property included in the taxable estate was a nonprobate asset is clearly shown in *Campbell* v. *Lloyd, supra.* In the *Campbell* case the court recognized that strong argument could be made for equitable apportionment of the estate tax to relieve the widow's share of her husband's estate from part or all of the burden of the federal estate tax on his estate, but refused to apply the doctrine, distinguishing the *McDougall* case at p. 698 as follows:

"The widow further contends that 'the concept of equitable apportionment * * * established' in Miller v. Hammond, supra, was 'restated and applied' in McDougall v. Central National Bank of Cleveland, 157 Ohio St. 45, 104 N.E.2d 441. That case dealt with apportionment of the estate tax between assets which were a part of the decedent's estate under the law of this state (referred to therein as 'probate assets') and assets which were not but which were taxed by the federal government as though they were (referred to therein as 'nonprobate assets')."

There is no statute in this jurisdiction authorizing apportionment of estate taxes. No provision in decedent's will is applicable. The widow's dower in personalty is distributable from probate assets. Consistently with the foregoing, equitable apportionment is therefore not applicable in this case to relieve dower from the impact of the federal estate tax. Whether in the absence of a proration statute the application of general equitable principles governing contribution permits equalization of the estate tax burden between an estate and the recipients of nonprobate assets included in the decedent's taxable estate is left open by this opinion.

We hold that the widow's share in personality in the above named decedent's estate is to be determined after the payment of federal estate taxes. Judgment will be entered accordingly.

*Dwight M. Rush* (*Henshaw, Conroy & Hamilton* of counsel) for Barbara Cox Glover.

*Charles A. Gregory* and *J. Russell Cades* (*Smith, Wild, Beebe & Cades* of counsel) for Hawaiian Trust Company, Limited, Executor of the Estate of James W. Glover, deceased.

### DISSENTING OPINION OF LEWIS, J., IN WHICH MIZUHA, J., JOINS.

Disagreeing with the court's conclusion that the statutes involved in the cited Wisconsin, North Carolina, West Virginia, Ohio, Oklahoma, Illinois and Maine decisions are, in substance and effect, comparable to R.L.H. 1955, § 319-1, I respectfully dissent.

In each of these states a surviving spouse has a statutory right to a share under the statute of descent and distribution as in case of intestacy.[1] A statutory grant of

---

[1]*Wisconsin. In re Uihlein's Will*, 264 Wis. 362, 59 N.W.2d 641. The wife's statutory right was to "the same share of his personal estate as if he had died intestate; provided, that when he shall have died testate the share of personal estate which she may so take shall not exceed the one-third part of his net personal estate * * *." Wis. Stat. § 233.14 (1959).

*North Carolina. Wachovia Bank & Trust Co.* v. *Green*, 236 N.C. 654, 73 S.E.2d 879. A widow dissenting from her husband's will "shall have the same rights and estates in the real and personal property of her husband as if he had died intestate." N.C. Gen. Stat. Ann. § 30-2 (1950).

*West Virginia. Guaranty Nat'l Bank* v. *Mitchell*, 144 W.Va. 828, 111 S.E.2d 494. A wife renouncing the will was entitled to "such share in the real and personal estate of the decedent as such surviving wife * * * would have taken if the decedent had died intestate leaving children." W.Va. Code Ann. § 42-3-1 (1961).

*Ohio. Campbell* v. *Lloyd*, 162 Ohio St. 203, 122 N.E.2d 695. The wife had an election "to take under the will or under the statute of descent and distribution. In the event of election to take under the statute of descent and distribution, such spouse shall take not to exceed one-half of the net estate." Ohio Gen. Code, § 10504-55.

an intestate share in itself implies that federal estate taxes first will be deducted. That was the reason for the overruling of *Miller* v. *Hammond,* 156 Ohio St. 475, 104 N.E. 2d 9, by *Campbell* v. *Lloyd,* 162 Ohio St. 203, 206-07, 122 N.E.2d 695, 697.[2]

Thus the first question is whether the right conferred on the surviving spouse by section 319-1 is other than and different from an intestate share. I am of the view that it is. As to the right in the real estate that is obvious. As to the right in the personal property, this seems to me equally clear.

In *Estate of Castle,* 25 Haw. 108, *aff'd,* 281 Fed. 609, this court held that the property passing to the widow

---

*Oklahoma. In re Rettenmeyer's Estate,* 345 P.2d 872 (Okla.) The rights of the surviving spouse were under a statute providing that "no spouse shall bequeath or devise away from the other so much of the estate of the testator that the other spouse would receive less in value than would be obtained through succession by law * * *." Okla. Stat. Ann. c. 84, § 44 (1951).

*Illinois. Northern Trust Co.* v. *Wilson,* 344 Ill. App. 508, 101 N.E.2d 604. A wife renouncing the will was entitled to a specified "share of the testator's estate after payment of all just claims." Ill. Rev. Stat. c. 3, par. 168 (1949), Jones Ill. Stat. Ann. § 110.264 (1940). Under an earlier form of this statute, at which time the statute read "after the payment of all debts," it was held that the widow took "by the intestate laws of this state" and was subject to the state inheritance tax. *Billings* v. *People,* 189 Ill. 472, 59 N.E. 798.

*Maine. Old Colony Trust Co.* v. *McGowan,* 156 Me. 138, 163 A.2d 538. A widow may elect to accept the provision made by the will "or claim the right and interest by descent, herein provided." If she takes the latter she "shall have and receive the same share of the real estate and the same distributive share of the real and personal estate * * * as is provided by law in intestate estates * * *." Me. Rev. Stat. Ann. c. 170, §§ 13 and 14 (1954).

[2]In *Campbell* the court said:

"It is arguable that, in the absence of statutory provisions which would be inconsistent with such a result, this court should require an equitable apportionment of the estate tax which would relieve this widow's share of her husband's estate from part or all of the burden of the federal estate tax on his estate. The question remains whether the statutes, which provide for the rights which she claims in his estate, would be consistent with such a result.

"The rights of the widow are admittedly dependent upon the provisions of Section 10504-55, General Code, that she may 'elect whether to take under the will or under the statute of descent and distribution' and on the provisions of the statute of descent and distribution." [The court then proceeded to analyze the latter statute.]

under the statute is not subject to the Hawaii inheritance tax. The court refused to follow *Billings* v. *People,* 189 Ill. 472, 59 N.E. 798, *supra,* note 1, and said that "the nature of the estate which the wife has by way of dower under this statute is the same as the common law dower, so that anything that may be said of common law dower is equally applicable to this estate." The forerunner of *Castle* was *Carter* v. *Carter,* 10 Haw. 687, which held that personal property left in trust under the will of decedent's father with remainder to decedent's heirs did not pass to decedent's widow when her only claim was under the dower statute, decedent having left issue. At page 693 the court said:

"* * * It is argued further that the estate cannot be a dower estate because it is subject to the husband's debts. But this is true also of dower in real property in some states. So, too, the power of the husband to dispose of the property free of dower right during his lifetime without a release by the wife, exists in some states even with reference to real estate."

As construed in *Ahin* v. *Opele,* 17 Haw. 525, 527, *Carter* decided that the right given by section 2271 of the Revised Laws, now R.L.H. 1955, § 319-1, "is paramount to both the statute of wills and the statute of descents, and that it is a dower estate and not an estate by descent."

The significance of the nature of the widow's right appears from *Randolph* v. *Craig,* 267 Fed. 993, 995-96, an estate tax case arising under the Revenue Act of 1916 which included in the taxable estate only an interest of the decedent at the time of his death which after his death was subject to the payment of the charges against his estate and the expenses of its administration and was subject to distribution as part of his estate. The court stated that the crucial question was "whether upon the husband's death the widow is entitled to homestead, dower

and a year's support by transfer from her husband's estate and in succession to him, or whether her right to these interests is vested in her by operation of law independently of her husband and not transmitted to her through him." After review of the Tennessee and Arkansas laws there involved, the court found that in these states "a widow's right to dower is not a succession to the title of her husband upon his death; that she does not succeed in her dower to her husband's title, but derives it by the marriage and her right as wife, to be consummated in severalty to her upon her husband's death; and that she takes it adversely to the inheritance from the husband," the court citing among other cases *McDaniel* v. *Byrkett,* 120 Ark. 295, 179 S.W. 491, which was cited in *Castle, supra.* The court concluded that since the widow took independently of her husband and adversely to his estate the federal estate tax did not apply under the Revenue Act of 1916.[3] Under the Hawaiian cases, dower in both real and personal property is taken by the widow adversely to the estate and not as a part of the estate, just as in *Randolph* v. *Craig, supra.* Thus, the widow may have her dower in personalty, as well as in real property, determined by a separate action cognizable in equity, as illustrated by *Notley* v. *Brown,* 16 Haw. 575.

In *Valentin et al., Ex'rs under the Will of John Ena* v. *Ena,* 18 Haw. 588, 590, it was held that if it becomes necessary to sell property of the decedent to pay debts:

"* * * the property in which the widow has no dower should be first disposed of. The common law dower of a widow is highly favored and the same protection should be accorded to statutory provisions conferring

---

[3]Subsequently, by section 402(b) of the Revenue Act of 1918 (40 Stat. 1097) there was enacted the provision, now Int. Rev. Code of 1954, § 2034, that the value of the gross estate shall include the value of all property "to the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower * * *."

dower. * * * We do not regard the reference to the husband's debts in the statute as implying that the enumerated property shall be charged therewith to the exclusion of the nondowable property."

That was at a time when some of the personal property was nondowable though owned by the decedent at the time of his death. The case nevertheless is significant in its holding that the statutory reference to the husband's debts does not exclude the power and duty of the courts to marshal assets for the payment of those debts on equitable principles so as to protect the widow's dower.

*Notley* v. *Brown, supra,* 16 Haw. 575, held that the statutory provision for dower in the personalty owned by the husband "after the payment of all his just debts" does not include in the word "debts" the expenses of administration, but under the rule at common law that expenses of administration take precedence over debts, the expenses of administration must be paid before the debts, and "as the widow is not entitled to her share until after the 'payment of all just debts,' the payment of which debts is subject to the payment of expenses of administration," the expenses of administration as well as debts must be deducted before dower is apportioned out of the personalty.

*Estate of Dillingham,* 25 Haw. 129, 134, held that the federal estate tax is "an expense of the estate as much so as any expense of administration and can in no sense be said to have passed to the residuary legatee and is therefore to be deducted before computing the inheritance tax due upon such legacy." The case did not hold that the federal estate tax is an administration expense in the true sense, merely that it is an expense of the estate and not the legatees. The case did not involve dower and in my opinion has no bearing on the case at hand, as more fully set out below.

The dower statute does not contain the words "expense of administration." Those words were injected into the dower statute by *Notley,* but only with respect to expenses of administration that take precedence over debts at common law. The federal estate tax is not such an administration expense but takes its priority under federal statutes. *Bowes* v. *United States,* 127 N.J. Eq. 132, 11 A.2d 720. It is precisely such federal statutory provisions—having to do with the collection of the tax and not its nature—which should be disregarded in determining the ultimate impact of the federal estate tax. That is a matter of state law as held by the cases cited in the majority opinion. From the standpoint of tax incidence, which alone is significant in applying the state law, decedent's debts come ahead of the tax.[4]

Certainly the federal estate tax is not one of "his [decedent's] just debts" within the meaning of R.L.H. 1955, § 319-1, nor do I perceive any reason for bringing it within the rule of the *Notley* case. I cannot agree that the *Dillingham* case calls for such treatment, and find *In re Barnhart's Estate,* 102 N.H. 519, 162 A.2d 168, directly in point. Under the New Hampshire statute, R.S.A. 1955, § 560:10, subd. II, the widow was entitled to take against the decedent's will a "portion of his personal estate, remaining after the payment of debts and expenses of administration," to wit $7500 "and also one half in value of the remainder above said seven thousand five

---

[4]The statute provides for the deduction of "claims against the estate" in determining the taxable estate. Int. Rev. Code of 1954, § 2053(a). The estate tax itself is not one of these deductions, as held even before the specific statutory provision, Int. Rev. Code of 1954, § 2053(c) (1) (B), to that effect. *Old Colony Trust Co.* v. *Malley,* 19 F.2d 346; *Irving Bank-Columbia Trust Co.* v. *United States,* 62 Ct. Cl. 564. Under Int. Rev. Code of 1954, § 2053(c) (2), the value of the property subject to claims under state law sets the limit of such deductions, but that does not signify the value as reduced by the federal estate tax itself. See Mertens, *Law of Federal Gift and Estate Taxation,* § 26.55. Thus the statute contemplates provision for claims before the tax is computed.

hundred dollars." The court held that the federal estate tax was not deductible in determining the remainder of which the widow took one half, saying:

"* * * While the federal estate tax constitutes a lien on the gross estate which in all events must be paid, it is not a debt within the meaning of RSA 560:10, subd. II. The payment of debts under this section refers to debts of the testator such as real estate taxes, income taxes and other obligations incurred by the deceased before his death. See *In re Grondin's Estate,* 98 N.H. 313, 316, 100 A.2d 160. This meaning is indicated by RSA 554:19, subd. IV which gives priority over legacies to the 'just debts owed by the deceased.' Nor are federal estate taxes considered to be 'expenses of the administration' in this state. The frequent practice of attorneys in providing in wills that federal and state taxes shall be paid '*as* an expense of administration' is an indication that the federal estate tax is not in the same category as the executor's and his attorney's fees, commissions and probate expenses generally in this state. We conclude that the payment of the federal estate tax is not a debt or an expense of administration in computing the widow's share under RSA 560:10, subd. II." 102 N.H. at 522, 162 A.2d at 171.

*Northern Trust Co.* v. *Wilson,* 344 Ill. App. 508, 101 N.E.2d 604, is not in point. There the applicable statute entitled the widow to take against the will a "share of the testator's estate after payment of all just claims." This language was held to embrace all expenses of the estate. As shown by *Billings, supra,* note 1, in Illinois the widow's right is a mere intestate share. Our statute speaks only of the deduction of decedent's debts. By judicial interpretation in *Notley* this includes administration expenses that take precedence over debts at common law. The broadening of the deduction under section 319-1 to

include *all* expenses of the estate is made for the first time by the majority opinion in this case and in my view is against the reason and spirit of the statute, reducing the widow's share to a mere intestate share contrary to prior decisions that even in the personal property her right is "the same as the common law dower" and to be protected as such.

This brings me to the second question submitted by the parties, reading: "Is the widow's dower in personalty to bear any part of the burden of the Federal estate tax."

As set out in note 2 of this opinion, the Ohio court in *Campbell* v. *Lloyd, supra,* 162 Ohio St. 203, 122 N.E.2d 695, conceded it to be "arguable that, in the absence of statutory provisions which would be inconsistent with such a result" there should be an equitable apportionment of the estate tax. Previously, there had been established in that state, by case law, the principle of equitable apportionment of the federal estate tax between probate and nonprobate assets. *McDougall* v. *Central Nat'l Bank,* 157 Ohio St. 45, 104 N.E.2d 441. That case was expressly distinguished and not overruled by *Campbell.*

The federal estate tax law sweeps into the gross estate, for the purposes of the tax, not only transfers by will or under the intestate laws, but also other transfers. As to transfers by will, the question of ultimate burden of the tax is dependent on the intention of the testator, a matter not involved here. As to transfers under the intestate laws, I am in complete agreement with the Ohio court that there is no room under such statutory provisions for equitable apportionment of the tax. This leaves for consideration the other transfers.

When the federal estate tax is levied on property which does not pass under decedent's will or under the intestate laws, and there is an absence of state statutory determination of the ultimate burden of the tax so levied, the

problem posed is whether the legatees, devisees or heirs should be saddled with the burden of paying the entire estate tax, or whether an equitable apportionment should be made, and the person taking the property withheld from the legatees, devisees or heirs be required to contribute such portion of the tax as has been engendered by the property so withheld from them. That type of property was referred to in *McDougall* as "nonprobate assets." However, the term is merely a convenient one for expressing the problem above outlined.

If I read the dower statute as the majority reads it I would conclude that there is no room for equitable apportionment of the federal estate tax levied on a widow's dower. Under the majority view, the entire federal estate tax, including that levied on the widow's dower, is simply an expense of administration, amounting to $904,437.84 in the present case, and this expense, the same as decedent's debts, comes ahead of the dower in personal property. But I am of the view that the federal estate tax is an expense of the estate that differs significantly from expenses of administration and is not to be treated the same as decedent's debts. Under this view, there is nothing in the dower statute, express or implied, as to the ultimate burden of the federal estate tax. I would fill that void by applying the rule of equitable apportionment, and would hold that the federal estate tax engendered by the dower is not at the expense of the estate. In some cases there may be little, if any, federal estate tax engendered by the dower because of the marital deduction, in others there may be a considerable amount of federal estate tax engendered by the dower, but whatever the amount I would not include it among the expenses of the estate. I would require the widow to contribute the amount of federal estate tax engendered by her dower.

Contribution was required, and the rule of equitable

apportionment applied to the wife's interest in community property, when community property was taxed under the federal estate tax law under circumstances posing a problem similar to that involved here. *Succession of Ratcliff,* 212 La. 563, 33 So. 2d 114; *In re Gallagher's Will,* 57 N.M. 112, 255 P.2d 317; see also *In re Heringer's Estate,* 38 Wash. 2d 399, 230 P.2d 297. The equitable apportionment rule also was applied to the wife's dower right in *Henderson* v. *Usher,* 125 Fla. 709, 170 So. 846, the reasoning of which is not satisfactory, however. Holding to the contrary is *Thompson* v. *Union & Mercantile Trust Co.,* 164 Ark. 411, 262 S.W. 324. That case was decided in 1924, since which time there has been a trend toward equitable apportionment of the federal estate tax when there are involved assets which do not pass under the will or the intestate laws. The 1942 decision in *Riggs* v. *Del Drago,* 317 U.S. 95, gave impetus to this trend. Since that date most of the states passing upon the point for the first time have followed the rule of equitable apportionment.[5]

In my view a widow who takes dower should be re-

---

[5] *Rhode Island. Hooker* v. *Drayton,* 69 R.I. 290, 33 A.2d 206 (1943); *Industrial Trust Co.* v. *Budlong,* 77 R.I. 428, 76 A.2d 600 (1950).

*Indiana. Pearcy* v. *Citizens Bank & Trust Co.,* 121 Ind. App. 136, 96 N.E.2d 918, *reh'g den.,* 121 Ind. App. 136, 98 N.E.2d 231 (1951).

*Delaware. Wilmington Trust Co.* v. *Copeland,* 33 Del. Ch. 399, 94 A.2d 703 (1953).

*Ohio. McDougall* v. *Central Nat'l Bank, supra,* 157 Ohio St. 45, 104 N.E.2d 441 (1952).

*Missouri. Carpenter* v. *Carpenter,* 364 Mo. 782, 267 S.W.2d 632 (1954); *Hammond* v. *Wheeler,* 347 S.W.2d 884 (Mo. 1961).

*Maine. Bragdon* v. *Worthley,* 155 Me. 284, 153 A.2d 627 (1959).

*New Mexico. In re Gallagher's Will, supra,* 57 N.M. 112, 255 P.2d 317 (1953).

*South Carolina. Myers* v. *Sinkler,* 235 S.C. 162, 110 S.E.2d 241 (1959). *Contra:*

*Washington. Seattle-First Nat'l Bank* v. *Macomber,* 32 Wash. 2d 696, 203 P.2d 1078 (1949). But see *In re Heringer's Estate, supra,* 38 Wash. 2d 399, 230 P.2d 297 (1951).

*Minnesota. Gelin* v. *Gelin,* 229 Minn. 516, 40 N.W.2d 342 (1949).

*Michigan. Knowles* v. *Nat'l Bank of Detroit,* 345 Mich. 671, 76 N.W.2d 813 (1956).

*Oklahoma. Tapp* v. *Mitchell,* 352 P.2d 900 (1960).

quired to contribute that part of the estate tax engendered by her dower whether in real or personal property. The state statutes are silent on this point, the will is not controlling, and equitable principles are applicable. The doweress, as the holder of an interest adverse to the estate, should be required to make an equitable contribution. In accordance with the reasoning of the community property cases and the cases cited in note 5, it is only when all of the taxable estate is transferred by will or under the statute of descent and distribution that the entire federal estate tax should be borne by the legatees, devisees or heirs.

However, even if the rule of equitable apportionment does not apply I find no warrant in the statute for requiring the widow to contribute all of her dower in personal property as will result in some cases,[6] or one-third of the entire federal estate tax as will result in other cases,[7] under the rule established by the court.

---

[6]Under the court's opinion, the widow in the present case will receive $87,100 as her dower in personal property out of $2,150,000 personal property owned by decedent at the time of his death of which $1,170,000 remains after the deduction of administration expenses and debts (according to the adjusted valuations and other figures set out in the agreed facts, in round numbers). It is easy to see that in many cases dower in personal property will be absorbed altogether by the federal estate tax.

[7]The widow will contribute one-third of the entire federal estate tax in the present case. Her contribution will be more than twice the tax engendered by her dower.