## MOORMAN *v.* MOORMAN.

1. INTERNAL REVENUE—FEDERAL ESTATE TAX—DEATH TAX.
    The Federal estate tax is an excise tax upon the transfer of an estate upon death of the owner and is not a tax upon succession and receipts of benefits under the law or will (26 USCA, § 800 *et seq.*).

2. SAME—FEDERAL ESTATE TAX—TAX ON INTEREST WHICH CEASED.
    The Federal estate tax was created by congress as death duties, as distinguished from a legacy or succession tax, and imposes the tax not on the interest to which the legatees and devisees succeed to on death but upon the interest which ceased by reason of the death (26 USCA, § 800 *et seq.*).

3. SAME—IMPOSITION OF FEDERAL ESTATE TAX—DETERMINATION OF WIDOW'S DISTRIBUTIVE SHARE.
    The determination of whether a widow's distributive share in an intestate's estate should be computed before or after deduction of the Federal estate tax requires interpretation of the State statutes of descent as to intestate property (26 USCA, § 800 *et seq.;* CL 1948, § 702.80; §§ 702.93, 702.95, as amended by PA 1949, No 78).

4. DESCENT AND DISTRIBUTION—DETERMINATION OF AMOUNT OF DISTRIBUTIVE SHARE.
    It is a State function to determine the amount of the distributive share as well as those who shall inherit the property of an intestate estate (CL 1948, § 702.80; §§ 702.93, 702.95, as amended by PA 1949, No 78).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 28 Am Jur, Inheritance, Estate and Gift Taxes §§ 2, 7.
[3, 6–9] 28 Am Jur, Inheritance, Estate and Gift Taxes § 279.
[4] 16 Am Jur, Descent and Distribution § 12.
[5] 16 Am Jur, Descent and Distribution § 90.

5. SAME—WIDOWS—STATUTES.

A widow's rights as to realty and personalty in an intestate estate and as to priority of charges and assignment of residue are established by statute (CL 1948, § 702.80; §§ 702.93, 702.95, as amended by PA 1949, No 78).

6. SAME—FEDERAL ESTATE TAX—RESIDUE.

The "residue" of an intestate estate in this State is arrived at by first deducting the Federal estate tax (26 USCA, § 800 et seq.; CL 1948, § 702.80; §§ 702.93, 702.95, as amended by PA 1949, No 78).

7. INTERNAL REVENUE—FEDERAL ESTATE TAX—GROSS ESTATE—DISTRIBUTION OF RESIDUE.

The Federal estate tax should be paid out of the decedent's estate as a whole, not upon the distributive shares, and the applicable State law governs the distribution of the remainder (26 USCA, § 800 et seq.; CL 1948, § 702.80; §§ 702.93, 702.95, as amended by PA 1949, No 78).

8. SAME—FEDERAL ESTATE TAX—WIDOWS.

The widow's distributive share in the estate of an intestate does not entirely escape the impact of all of the Federal estate tax (26 USCA, § 800 et seq.; CL 1948, § 702.80; §§ 702.93, 702.95, as amended by PA 1949, No 78).

9. SAME—ESTATE TAXES—DESCENT AND DISTRIBUTION—WIDOWS.

Estate taxes are a charge against the gross estate of an intestate and must be deducted therefrom before determination can be made of the net estate and the widow's right to 1/3 of the residue (26 USCA, § 800 et seq.; CL 1948, § 702.80; §§ 702.93, 702.95, as amended by PA 1949, No 78).

10. CONSTITUTIONAL LAW—SUPREME COURT—LEGISLATURE.

The Supreme Court has no control over matters of judgment exercised by the legislature in enacting laws.

Appeal from Wayne; Webster (Arthur), J. Submitted June 18, 1954. (Docket No. 65, Calendar No. 46,189.) Decided October 4, 1954.

Petition for declaration of rights by Eva H. Moorman, widow, against Charles T. Moorman, Catherine Moorman Schneider and Achilles H. Moorman, Jr., children, the latter individually and as administrator of the estate of Achilles H. Moorman, deceased,.

to determine proper computation of shares of estate impressed with Federal estate tax. Decree for defendants. Plaintiff appeals. Affirmed.

*Dickinson, Wright, Davis, McKean & Cudlip* (*Robert E. McKean* and *Thomas C. Tilley,* of counsel), for plaintiff.

*Hill, Lewis, Andrews, Granse & Adams* (*Edward T. Goodrich* and *Marlin F. Scholl,* of counsel), for defendants.

*Amicus curiae:*
*Beaumont, Smith & Harris* (*U. George Krapfel,* of counsel).

KELLY, J. Achilles H. Moorman died intestate on July 23, 1951, leaving a Michigan gross estate of approximately $832,000. Plaintiff, the widow, and defendants, children of deceased, are the sole heirs-at-law of said deceased.

Plaintiff contends that the Federal estate tax ($142,800) should not be deducted from the gross estate before plaintiff's 1/3 share, as widow, is determined. Defendants contend the Federal estate tax is a charge which should be deducted from the gross estate before the widow's share is computed.

If plaintiff's contention is correct she will receive $244,000 as her share of the estate. Defendants contend her share should be $47,600 less, or $196,400. Under plaintiff's theory the children would each receive $119,800, whereas under defendant's contention each would be entitled to $130,933.

Decree was entered for defendants. Plaintiff appeals, claiming that the court erred in holding that under the Michigan statutes of descent and distribution the Federal estate tax must first be deducted in order to arrive at the amount to be used as the basis

for computing the widow's statutory 1/3 interest in her deceased husband's intestate estate.

In 1916 congress abandoned the inheritance tax and since that time the Federal government has collected an estate tax. In 1948 congress provided for the "marital deduction" thereby adding to then existing exemptions and deductions, and providing for the marital deduction in the tax up to 50% of the gross amount of the estate. It is conceded in this case that plaintiff's share under the statute is less than 50% of the gross estate.

The Federal estate tax is an excise tax upon the transfer of an estate upon death of the owner and is not a tax upon succession and receipts of benefits under the law or will. It was created by congress as death duties as distinguished from a legacy or succession tax and imposes the tax not on the interest to which the legatees and devisees succeed to on death but upon the interest which ceased by reason of the death.

To determine whether plaintiff's distributive share as widow should be computed before or after deduction of the Federal estate tax requires interpretation of the Michigan statutes of descent as to intestate property. It is the State's function to determine the amount of the distributive share as well as those who shall inherit the property of an intestate estate. Plaintiff's rights are established by CL 1948, § 702.93, as amended by PA 1949, No 78 (Stat Ann 1949 Cum Supp § 27.3178 [163]), as to personal property; by CL 1948, § 702.80 (Stat Ann 1943 Rev § 27.3178 [150]), as to real property; and by CL 1948, § 702.95, as amended by PA 1949, No 78 (CLS 1952, § 702.95, Stat Ann 1953 Cum Supp § 27.3178 [165]), as to priority of charges and assignment of residue of intestate estates.

The trial court in its opinion stated: "Plaintiff in the case at bar takes only by virtue of the statute.

Her share is 1/3 of the 'residue'. 'Residue' is express-ly defined by statute so as to require a deduction of the estate tax before a 'residue' is arrived at." We agree with the court's conclusion in this regard.

Plaintiff requests that this Court recognize equi-table principles and interpret the Michigan stat-utes in conjunction with the Federal revenue law and construe the Michigan statutes as though "es-tate taxes" were not mentioned when computing the widow's intestate distributive share in this case. Plaintiff contends that "only by computing spouse's share before deducting Federal estate tax will pur-pose of marital deduction be given effect," and that "any other result would necessarily deprive her of the freedom from tax provided by congress." Unit-ed States supreme court decisions do not sustain this theory.

In *Riggs* v. *Del Drago,* 317 US 95 (63 S Ct 109, 87 L ed 106, 142 ALR 1131), the court said (pp 97, 98):

"We are of opinion that congress intended that the Federal estate tax should be paid out of the estate as a whole, and that the applicable State law as to the devolution of property at death should gov-ern the distribution of the remainder and the ulti-mate impact of the Federal tax.   *   *   *   Its legisla-tive history indicates clearly that congress did not contemplate that the government would be interested in the distribution of the estate after the tax was paid, and that congress intended that State law should determine the ultimate thrust of the tax."

In *Y.M.C.A. of Colombus Ohio,* v. *Davis,* 264 US 47 (44 S Ct 291, 68 L ed 558), the court dealt with the problem of residuary bequests to charities. The law then, as now, provided for the deduction of gifts to charities in arriving at the net estate subject to tax in a way similar to the marital deduction from the whole estate arrives at a taxable net estate. The laws of Ohio provided that in the absence of a contrary pro-

vision in the will, the Federal estate tax was to be paid out of the residue notwithstanding the leaving of the residue to qualified charities, and it was contended that congress could not have intended that the tax should be paid out of the very gifts which were excluded from the taxable net estate (subdivision 3). In deciding this question the United States supreme court said (pp 49–51):

"The argument of the petitioners is, that as the tax is expressly made equal to a percentage of the value of the net estate and is imposed upon the transfer of that net estate, congress can not have intended that the tax should be paid out of the very gifts which by subdivision (3) are excluded from the net estate. It is further urged that the manifest purpose of congress was to exempt the beneficiaries under subdivision (3) from tax, and the result of the construction by the Ohio courts is in this case that they are the only ones to pay it. These arguments are persuasive, but they derive much of their strength from the special circumstances of the present case.
\*   \*   \*

"There is nothing in subdivision (3) of § 403\* which exempts the recipients of altruistic gifts from taxation; it only requires a deduction of them in calculating the amount of the estate which is to measure the tax. It exempts the estate from a tax on what is thus deducted just as subdivision (4) exempts in terms the estate from taxation on its first $50,000; but this does not operate to exempt any legatee who may be entitled to the first $50,000 in the distribution, from deduction to contribute to the tax ultimately imposed, if by the law of the State, such should be its incidence. \*   \*   \*

"These donees do not pay the taxes any more than they pay the funeral expenses, the lawyers, the executors and the testator's debts."

---

\* The reference is to the revenue act of 1918, chap 18, 40 Stat 1057, 1096, 1098.—REPORTER.

An examination of the marital deduction provision discloses that congress did not determine the burden of the tax. 26 USCA, § 812 (e)(1)(E)(i), provides:

"There shall be taken into account the effect which a tax imposed by this chapter, or any estate, succession, legacy, or inheritance tax, has upon the net value to the surviving spouse of such interest."

The above-quoted language was held by the Wisconsin supreme court in *In re Uihlein's Will* (1953), 264 Wis 362 (59 NW2d 641), "to expressly negative any intent on the part of congress that the widow's share of the personal estate in the instant case should entirely escape the impact of all of the Federal estate tax."

Plaintiff's contention is that the estate tax should be borne by those whose bequests contribute to the tax burden and such has been provided for in 23 States by tax proration laws. The Connecticut supreme court of errors in *Jerome* v. *Jerome,* 139 Conn 285 (93 A2d 139), commented on proration laws as follows (pp 292, 293):

"Only through the allocation of the entire amount of the marital allowance to the value of the widow's bequest will the intent as well as the spirit of the proration statute be met, for the statute is based' on the equitable principle that the estate taxes should be borne by those whose bequests contribute to the tax burden and, conversely, that all those whose legacies do not in any way create or add to that burden should not be required to bear it."

An Illinois statute provides that where a widow renounces her right to take under a will her share in the estate is determined after payment of all just claims. The Illinois court considered that the Federal estate tax constituted a just claim, the same as a debt, and, therefore, the Federal estate tax must be

deducted before apportioning the renouncing wid-
ow's share. *Northern Trust Co.* v. *Wilson,* 344 Ill
App 508 (101 NE2d 604).

In *In re Uihlein's Will, supra,* the material part
of the statute under consideration read: "Provided,
that when he shall have died testate the share of
personal estate which she may so take shall not ex-
ceed the 1/3 part of his net personal estate." In that
case the court said:

"It seems to us that the words *'net estate'* of our
statute are clear and unambiguous and are subject
to no other interpretation than that they mean that
part of the estate which remains after payment of
all charges against the entire estate. Federal estate
taxes stand in no different category than do debts
or administration expenses. We deem that it would
be unwarranted judicial legislation for this court to
attempt to apportion the impact of the Federal
estate tax as did the Kentucky and Ohio courts. The
legislature has the power to enact an apportionment
of Federal estate tax statute providing for a differ-
ent method of bearing the impact of Federal estate
taxes if it should determine the same desirable.
However, 3 general sessions of the legislature have
been held since congress amended the Federal estate
tax statute so as to provide for the marital deduc-
tion, and to date our legislature has not seen fit to
adopt such apportionment statute."

Plaintiff shares in the intestate estate of her de-
ceased husband solely by virtue of the statute. The
Michigan legislature could have provided that the
widow should not be called upon to share any part
of the Federal estate tax, as was done by approxi-
mately 1/2 of the legislatures of the other States. Al-
though the Michigan legislature has convened in 5
regular sessions since congress amended the estate
tax in 1948, no such action has been taken.

. We have given careful consideration to supreme court decisions from 5 States: The decision of the Ohio court in the case of *Miller* v. *Hammond* (1952), 156 Ohio St 475 (104 NE2d 9), held that "fundamental principles of equity" should prevail and that the widow's share should be computed before deduction of Federal estate tax from the gross estate. A similar conclusion was arrived at by the Kentucky supreme court in *Lincoln Bank & Trust Co.* v. *Huber* (1951) (Ky), 240 SW2d 89.

The following 3 cases support defendants' position in the instant case: *Northern Trust Co.* v. *Wilson, supra; Wachovia Bank & Trust Co.* v. *Green,* 236 NC 654 (73 SE2d 879), and *In re Uihlein's Will, supra.*

The statutes of descent and distribution are created by the legislature. The Michigan legislature has exercised that privilege and right, and has specifically declared that estate taxes shall be considered as a charge against the gross estate in determining the net estate, in order to determine the residue and the widow's right to 1/3 of such residue. It was within the province of the legislature to enact the statutes applicable to this case and this Court has no control over matters of judgment exercised by the legislature in enacting laws.

Judgment affirmed. Costs to defendants.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.