*In re* SPENCER ESTATE

SPENCER v SPENCER

Docket No. 80752. Submitted October 3, 1985, at Lansing.—Decided December 16, 1985. Leave to appeal applied for.

Charles P. Spencer died testate, leaving $35,000 to each of his two sons with the residue of the estate going to his second wife, Mae E. Spencer. The will was entered for probate in Oakland County Probate Court and Mrs. Spencer was appointed as personal representative of the estate. The sons at first contested the will on the basis of undue influence, but thereafter settled with Mrs. Spencer and withdrew their objections. Dawn Annette Spencer filed objections to the entry of the order of settlement and petitioned for commencement of proceedings, claiming that she was the decedent's illegitimate child and an heir at law. Petitioner also filed a claim against the estate for back child support. Following an evidentiary hearing, the probate court, John J. O'Brien, J., found that petitioner was an heir at law but denied the back child support claim on statute of limitations grounds. Mae E. Spencer, as respondent and personal representative of the estate, appealed, claiming that petitioner had presented insufficient evidence to carry the evidentiary burden imposed by the statute which treats illegitimate children as heirs at law under certain circumstances. *Held:*

1. While at common law a child born out of wedlock was not permitted to inherit as an heir of his or her father, by statute a child born out of wedlock may now be treated as an heir at law under limited circumstances. While that statute is in derogation of the common law, it should be construed sensibly and in

REFERENCES

Am Jur 2d, Bastards §§ 146-165.

Am Jur 2d, Descent and Distribution § 62.

Am Jur 2d, Statutes §§ 142 *et seq.*

Discrimination on basis of illegitimacy as denial of constitutional rights. 38 ALR3d 613.

Inheritance by illegitimate from or through mother's ancestors or collateral kindred. 97 ALR2d 1101.

harmony with the legislative purpose, since it is also remedial in nature.

2. The intent of the Legislature in limiting the circumstances under which a child born out of wedlock may be considered to be an heir at law of his or her father was to guard against specious claims. Accordingly, the statute requires either one of the designated written forms of acknowledgment of paternity by the father or a mutual acknowledgment by the father and child of the biological relationship which was made before the child's eighteenth birthday and continued until terminated by the death of either the father or child.

3. The statute does not require that once that ackowledgment is made by the father and child that there be an ongoing social relationship between the father and child; rather the statute only requires that there be no evidence of an intent to renounce or terminate the acknowledgment of the relationship by either party.

4. There was sufficient evidence to establish that the decedent and child acknowledged the biological relationship and never renounced or desired to terminate that acknowledgment. Accordingly, the probate court did not err in finding petitioner to be an heir at law.

Affirmed.

1. DESCENT AND DISTRIBUTION — CHILDREN BORN OUT OF WEDLOCK — COMMON LAW — HEIRS AT LAW.

A child born out of wedlock, at common law, was not permitted to inherit as an heir of his or her father.

2. DESCENT AND DISTRIBUTION — CHILDREN BORN OUT OF WEDLOCK — STATUTES — JUDICIAL CONSTRUCTION.

The statute permitting a child born out of wedlock to inherit as an heir of his or her father under certain circumstances, while in derogation of the common law, is remedial in nature and must be construed sensibly and in harmony with the legislative purpose (MCL 700.111[4][c]; MSA 27.5111[4][c]).

3. STATUTES — JUDICIAL CONSTRUCTION.

A court, in construing a statute, should look to the object of the statute and the evil or mischief the statute is designed to remedy and then give a reasonable construction to the statute so as to best accomplish the statute's purpose.

4. DESCENT AND DISTRIBUTION — CHILDREN BORN OUT OF WEDLOCK — HEIRS AT LAW.

The provisions of the statute permitting a child born out of

wedlock to inherit as an heir of his or her father attempt to guard against specious claims by requiring that the father have made some acknowledgment during his lifetime that the claimant was his child; under the subsection of the statute dealing with the situation where there is no written acknowledgment during the father's lifetime, the Legislature has required that there be made before the eighteenth birthday of the child a mutual acknowledgment by the father and child of the biological relationship and that the acknowledged biological relationship continue until the death of either the father or the child (MCL 700.111[4]; MSA 27.5111[4]).

5. Descent and Distribution — Children Born Out of Wedlock — Heirs at Law.

The statute permitting a child born out of wedlock to inherit as an heir of his or her father where both father and child mutually acknowledged their biological relationship before the child's eighteenth birthday and continued to acknowledge that relationship until the death of either does not require an ongoing social relationship, but rather requires only that there be sufficient evidence of a mutually acknowledged biological relationship and sufficient evidence that neither party renounced or terminated his or her acknowledgment of the relationship (MCL 700.111[4][c]; MSA 27.5111[4][c]).

*Robert D. Starkman* and *Paul H. Stevenson,* of counsel, for petitioner.

*Philip E. Rowston* and *Bruce T. Leitman,* of counsel, for respondent.

Before: M. J. KELLY, P.J., and ALLEN and R. M. SHUSTER,* JJ.

ALLEN, J. In this appeal as of right, we are asked to determine whether petitioner, Dawn Annette Spencer, presented sufficient evidence to establish the necessary elements of MCL 700.111(4)(c); MSA 27.5111(4)(c), which governs one circumstance in which a child born out of wedlock may take by intestate succession.

Charles P. Spencer died on June 29, 1983. He

---

* Circuit judge, sitting on the Court of Appeals by assignment.

left a will dated May 26, 1983, in which he bequeathed $35,000 to each of his two sons, with the residue of the estate going to his second wife, Mae E. Spencer. Originally, the sons contested the will, claiming that Spencer lacked testamentary capacity and the will was the result of undue influence. However, the sons withdrew their objections and entered into a settlement with Mrs. Spencer, the personal representative of the estate.

Petitioner, Dawn Annette Spencer, filed objections to the entry of the order of settlement and a petition for commencement of proceedings, claiming that she was decedent's illegitimate child and an heir at law. Although these objections were later withdrawn, petitioner filed a claim against the estate for back child support. Following an evidentiary hearing, the probate judge determined that petitioner is an heir at law, but denied her claim for back child support on statute of limitations grounds. Petitioner has not appealed this ruling. However, Mae E. Spencer, as personal representative of the estate, has appealed the determination that petitioner is an heir at law. Although not clear from the record before us, it appears that petitioner may renew the objections to the will which were originally presented by the decedent's sons.

As a child born out of wedlock, in order to be deemed an heir at law petitioner must satisfy the prerequisites of MCL 700.111(4)(c); MSA 27.5111(4)(c),[1] which provides:

"(4) If a child is born out of wedlock or if a child is born or conceived during a marriage but not the issue

---

[1] The statute provides two alternative means by which an illegitimate child may establish the right to inherit. See MCL 700.111(4), subds (a) and (b); MSA 27.5111(4), subds (a) and (b). However, petitioner has not sought to establish and there are no facts to indicate that these two provisions are applicable to the facts of this case.

of that marriage, a man is considered to be the natural father of that child for all purposes of intestate succession if any of the following occurs:

*   *   *   .

"(c) The man and the child have borne a mutually acknowledged relationship of parent and child which began before the child became age 18 and continued until terminated by the death of either."

At common law, a child born out of wedlock was not permitted to inherit as an heir of his or her father. *In re Harper's Estate,* 272 Mich 476, 480; 262 NW 289 (1935). As MCL 700.111(4)(c) is in derogation of the common law, respondent maintains that it must be strictly construed. *Yount v National Bank of Jackson,* 327 Mich 342, 347-348; 42 NW2d 110 (1950). Respondent asserts that the probate court failed to strictly construe subsection (4)(c), arguing that the evidence was insufficient to show mutual acknowledgment and continuity of the relationship.

Before reviewing the evidence to determine whether these two elements were supported, we believe that it is necessary to determine what kind of relationship the Legislature was referring to when it enacted this statute. Pertinent to this analysis is the rule of statutory construction which dictates that remedial legislation shall be given a liberal construction. As was stated in *In re Cameron's Estate,* 170 Mich 578, 582; 136 NW 451 (1912):

"[T]he progress of civilization and the spread of correct ideas upon the subject have tended largely to the amelioration of the condition of illegitimates and to the obliteration of the old common-law doctrine that they were to be regarded as outcasts. The statute in question is remedial in character, and it is to be presumed that the legislature intended the most beneficial construction of the act consistent with a proper regard for the

ordinary canons of construction. Notwithstanding the rule that a statute in derogation of the common law must be construed strictly, it is well settled that it must be construed sensibly and in harmony with the legislative purpose."

The parties have not provided, and we have not been able to unearth, any legislative history or case law which might lend clarity to what was intended by subsection (4)(c). Thus, the question raised is of first impression. However, it is well established that, in attempting to discern the intent of the Legislature, "a court will look to the object of the statute, the evil or mischief it is designed to remedy, and will apply a reasonable construction which best accomplishes the statute's purpose". *R & T Sheet Metal, Inc v Hospitality Motor Inns, Inc,* 139 Mich App 249, 253; 361 NW2d 785 (1984), quoting *Pittsfield Twp v City of Saline,* 103 Mich App 99, 104-105; 302 NW2d 608 (1981).

We believe that the purpose of subsection (4)(c) is best illustrated by way of comparison to subsections (4)(a) and (4)(b) of the statute. Subsection (a) allows an illegitimate child to inherit where the father has executed and recorded a written acknowledgment of paternity. Subsection (b) permits an inheritance where the father and mother request in writing that the child's birth certificate be corrected and a substitute certificate is issued. It appears that the mischief these provisions were intended to obviate is the situation where deceitful claims are made against an estate by individuals posing as the deceased's long-lost children. These provisions guard against such specious claims by requiring that the father make some acknowledgment, during his lifetime, that the claimant is his child.

It appears that subsection (c) was designed to accomplish the same objective. However, since the relationship of parent and child is not evidenced by a written acknowledgment during the deceased's lifetime, it appears that the Legislature imposed a more onerous burden on claimants. Despite this burden, we do not believe that the Legislature intended to require a distinct kind of relationship in order for a child coming within the purview of this provision to inherit. Rather, we believe that the Legislature's concern was to insure that a biological relationship of parent and child did indeed exist. Accordingly, we believe that the statute requires a mutually acknowledged biological relationship of parent and child. The mutually acknowledged aspect of this relationship must begin before the child's eighteenth birthday. The relationship cannot be legally severed by, for example, adoption or termination of parental rights before the death of either the parent or child.

Respondent has argued that the evidence was insufficient to show a mutually acknowledged and continuing social relationship of parent and child. We do not believe that the statute should be construed to require an ongoing social relationship, since such an interpretation of subsection (c) would render it inconsistent with subsections (a) and (b). Moreover, we find that the evidence was sufficient to show that both parent and child acknowledged a biological relationship and that this relationship continued until the decedent's death.

The probate court found that the testimony given by all witnesses at the evidentiary hearing was credible. Natalie B. Cairns, the petitioner's mother, testified that she met the decedent in 1955 while living in Columbus, Mississippi. She and the decedent had a business relationship which grew into a platonic friendship. When the decedent

offered Cairns a better paying job, she and her family moved to Jacksonville, Mississippi. They moved once again when the decedent moved his offices to Arlington, Texas. Within six months of moving to Arlington, Cairns left the decedent's employ because the work was consuming all of her time. She moved to Nashville, Tennessee, and did not communicate with the decedent for approximately two years.

In late 1958 or early 1959, the decedent came to visit Cairns in Nashville and explained that his wife was divorcing him. Around April of 1959, Cairns and the decedent became physically intimate. Thereafter, they began seeing each other every other weekend. Petitioner was conceived on Memorial Day weekend in 1959 during a trip to Cape May, New Jersey, where Cairns and the decedent registered at a motel as "Mr. and Mrs. Spencer".

When Cairns informed the decedent that she was pregnant, he said that he was not ready to get married but told Cairns to have the baby and tell everyone that they were married. Further, he provided $100 per week in support during the pregnancy, as Cairns' employment had been terminated.

Petitioner was born on March 6, 1960. The decedent was named as petitioner's father on her birth certificate and Cairns stated that the decedent furnished all of the necessary information for the certificate. Shortly after the birth, Cairns moved her family to Decatur, Alabama, as she had secured employment in nearby Huntsville. The decedent came to visit several times and voluntarily paid $20 per week in child support. Further, Cairns moved to California in February of 1962 at the decedent's request when he was transferred to the west coast. Cairns and her family often visited

the decedent at his apartment in California. Further, petitioner's older half-brother often took her to the decedent's office, where the decedent would play with petitioner.

In May or June of 1963, the decedent moved to Philadelphia, terminated his relationship with Cairns, and ceased making child support payments. However, the decedent never renounced his paternity of petitioner. In 1967, the decedent objected to the adoption of petitioner by Cairns's new husband. In 1980, Cairns asked the decedent for financial assistance when the petitioner shattered her leg in an accident. Although the decedent had cash flow problems at that time, he promised to catch up on all the back child support payments in the near future. Cairns telephoned the decedent in May of 1984 to request financial assistance with petitioner's college expenses and to invite the decedent to petitioner's wedding. It was at this time that Cairns learned that the decedent had died.

We believe that this evidence overwhelmingly supports the probate court's finding that the decedent acknowledged a parental relationship with the petitioner which was never renounced or terminated. While the evidence of an acknowledgment of this relationship on the part of petitioner is not as compelling, we nonetheless believe that it was sufficient. We find it highly significant that the petitioner has borne the decedent's surname since her birth. In addition, she looked to the decedent for financial support throughout his lifetime and intended that he be present on her wedding day. Moreover, the evidence indicates that Cairns was open with her children regarding her relationship with the decedent, leading to the inference that petitioner knew the decedent to be her father.

The onerous burden legislatively imposed on claimants such as petitioner should not be construed so as to become insurmountable. The legislative purpose is accomplished through a showing that both parent and child have acknowledged a biological relationship which neither has disturbed during the course of either's lifetime. Since the probate court found that evidence supporting such a finding was credible, we uphold the court's determination that petitioner is an heir at law.

Affirmed.