**Debra OUTWATER for the minor child, Cody McCLINCHEY, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

Civ. A. No. 94–71890.

United States District Court, E.D. Michigan, Southern Division.

Aug. 7, 1995.

Deborah A. Bonner, Joseph K. Cox, Joseph K. Cox Assoc., Webberville, MI, for plaintiff.

### ORDER ACCEPTING THE MAGISTRATE JUDGE'S JANUARY 30, 1995 REPORT AND RECOMMENDATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

■ The court, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, 28 U.S.C. § 636(b)(1)(B), and LR 72.1(d)(2) (E.D.Mich. Jan. 1, 1992), has reviewed the magistrate judge's January 30, 1995 report and recommendation as well as plaintiff's February 16, 1995 objections and defendant's March 14, 1995 response filed thereto. After conducting a *de novo* review, the court accepts the magistrate judge's report and recommendation as the court's findings and conclusions.[1] A copy of the magistrate judge's report and recommendation is attached hereto as part of this order.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the magistrate judge's January 30, 1995 report and recommendation is **ADOPTED.**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **GRANTED.** The findings of the Secretary are **AFFIRMED.**

**SO ORDERED.**

1. The court finds the decision of the Michigan Court of Appeals in *In re Estate of Scharenbroch*, 191 Mich.App. 215, 477 N.W.2d 436 (1991) especially compelling. In that case, the court was faced with a nearly identical situation. Rather than seizing an opportunity to liberally construe the Michigan statute at issue, as was done in *In re Jones*, 207 Mich.App. 544, 525 N.W.2d 493 (1994), the court in *Scharenbroch* followed the clear language of the statute. In doing so, the court stated as follows:

[W]e are bound by the language employed by the Legislature, and that language requires that we affirm the decision of the probate court

### REPORT AND RECOMMENDATION

MORGAN, United States Magistrate Judge.

#### I.

This matter is before the court on cross-motions for summary judgment. This is a social security action in which plaintiff seeks child's insurance benefits on behalf of the minor child Cody McClinchey, born to her out of wedlock. The issue before the court is whether the defendant's determination that Cody was not the deceased wage earner's child, as defined under the Social Security Act, is supported by substantial evidence. At the request of plaintiff's counsel, oral argument was held before the magistrate judge. After considering the briefs, as well as the arguments of counsel, and the law, see *Gray v. Richardson*, 474 F.2d 1370 (6th Cir. 1973); *Estate of Spencer*, 147 Mich.App. 626, 383 N.W.2d 266 (1985); *Estate of Scharenbroch*, 191 Mich.App. 215, 477 N.W.2d 436 (1991); and MCLA 700.111(4), the magistrate judge recommends that the motion of the government for summary judgment be granted and the decision denying child's benefits be affirmed.

Plaintiff submits that Cody is the child of the deceased wage earner Bryan Kirk Meyer, a Michigan resident, who died on or about January 13, 1991. Cody was born April 17, 1987, is under eighteen and unmarried. Plaintiff submits that the Michigan Probate Court proceeding determining Cody to be the sole heir at law is sufficient to establish entitlement to benefits.

The Social Security Act provides for survivor benefits for a child of a deceased wage earner if certain criteria are met. The child

even if the result appears harsh upon a child whose actual paternity is apparently not seriously disputed. We, as judges, may not substitute our own personal notions of fairness for a clearly worded legislative mandate.

*Scharenbroch*, 191 Mich.App. at 217–18, 477 N.W.2d 436. Similarly, this court will not assume a quasi-legislative role merely to do what "feels good." *See also Moorman v. Moorman*, 340 Mich. 636, 644, 66 N.W.2d 248 (1954) ("It was within the province of the legislature to enact the statutes applicable to this case and this Court has no control over matters of judgment exercised by the legislature in enacting laws.").

must be under eighteen, unmarried, and satisfy one of several statutory definitions to be "child of a deceased wage earner." 42 U.S.C. § 402(d), § 416(h). An individual who is under 18 and unmarried is defined as a child of the wage earner if the mother was married to the insured wage earner or if the child is adopted by the wage earner. Neither of these definitions is applicable in this case. Other methods allowing the child to collect, but on which plaintiff does not rely, include (2) common law marriage of the parents, defined as a technically deficient marriage ceremony, 42 U.S.C. § 416(h)(2)(B), [no ceremony was performed in this case]; (3) written acknowledgment of parentage by the wage earner, 42 U.S.C. § 416(h)(3)(C)(i)(I), [Mr. Meyer refused to provide the same]; (4) a court decree that the wage earner is the parent of the applicant, provided that the decree was issued prior to the death of the insured, 42 U.S.C. § 416(h)(3)(C)(i)(II), [no court decree was issued prior to the wage earner's death]; (5) a court order requiring the insured person to contribute to the support of the applicant because the applicant was his son or daughter, 42 U.S.C. § 416(h)(3)(C)(i)(III), [this did not occur]; (6) a determination by the Secretary that the deceased insured was the parent of and "was living with or contributing to the support of the applicant at the time the insured individual died," 42 U.S.C. § 416(h)(3)(c)(ii) [this did not occur].

Plaintiff relies of the portion of the federal statute which allows the establishment of entitlement to child's benefits through eligibility to inherit property under the intestate succession laws of the state. 42 U.S.C. § 416(h)(2)(A). The section states in pertinent part:

> In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this title, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the state in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of

the State in which he was domiciled a the time of his death.

42 U.S.C. § 416(h)(2)(A).

Here, the Michigan Probate Court found Cody to be the sole heir of Kirk Meyer. The ALJ considered the state law and reached a different legal conclusion. The ALJ declined to defer to the state probate court decision because it did not meet the criteria for deference set forth in *Gray v. Richardson*, 474 F.2d 1370 (6th Cir.1973), adopted by the Secretary in SS Ruling 83–37c. The ALJ determined that the Probate Court did not conform to the requirements of the Michigan Probate Code, and would be subject to reversal by the Michigan Supreme Court. (Tr. 12)

The law applicable to the state court's determination is the Michigan Probate Code, which provides four ways for a child born out of wedlock to be included in intestate succession. The code states in relevant part:

> (4) if a child is born out of wedlock ... a man is considered to be the natural father of that child for all purposes of intestate succession if any of the following occurs:
>
> (a) the man joins with the mother of the child and acknowledges that child as his child in a writing executed and acknowledged by them ...
>
> (b) the man joins with the mother in a written request for a correction of certificate of birth pertaining to the child that results in the issuance of a substituted certificate recording the birth of the child;
>
> (c) the man and the child have borne a mutually acknowledged relationship of parent and child that began before the child became age 18 and continued until terminated by the death of either;
>
> (d) the man has been determined to be the father of the child and an order of filiation establishing that paternity has been entered pursuant to the paternity act ...

MCLA § 700.111 (1993) (Tr. 100).

Michigan appellate courts have held that the express mention of four circumstances under which a man is considered to be the natural father of a child born out of wedlock implicitly excludes all other circumstances. See, *Matter of Estate of Vellenga,* 120 Mich. App. 699, 327 N.W.2d 340 (1982).

Plaintiff relies on the third criteria, a mutually established relationship, and concedes that none of the other sections would apply. No father's name is listed on Cody's birth certificate and no request for correction was made. No written acknowledgment was executed. No Order of Filiation was entered by the circuit court or any state court.[1] Mr. Meyer was never served with any court documents. Mr. Meyer had no assets. However, after his death, in January, 1992, DNA testing conducted on his parents resulted in a conclusion that Cody was most likely his child. (Tr. 85)[2] This testing indicated that Mr. Meyer could not be excluded and that his chances of being Cody's father were more than 99 percent. Plaintiff testified at the Probate Court hearing that she never told Cody that Kirk was his father. (Tr. 145) The Livingston County Probate Court determined that based on plaintiff's testimony and the results of the blood test, Cody was the son of Kirk Meyer and the sole heir under the Michigan laws governing intestate succession. MCLA 700.111 (Tr. 146).

There was some other evidence of paternity in the record, although it is insufficient to meet the regulatory criteria. Plaintiff testified at the social security hearing that Mr. Meyer admitted paternity to Charles Salyers. (Tr. 24) However, the record is equivocal on this point. Two documents from Mr. Salyers are in the record. The first is a handwritten note dated 4-15-91 which states in full as follows: "Kirk Meyer was a friend of mine we have hung around together and he has mentioned to me several times that Cody is his child." (Tr. 80) The second document is the undated request for information from the social security office. The questions propounded by the office are crossed out and the answer written in is as follows: "The broad

is sick, the man is dead let him rest in peace. Now that he is gone, he is defenseless She's been with other men besides Kirk. She slept with two other men while I was with her. If you want to find the father look in the Pinckney phone book. That's the truth Don't bother me with this nonsense." (Tr. 65–6) [spelling and grammar unedited]

Two other individuals, Carol Flack, the mother of plaintiff Debra Outwater, and Leana Crockett, submitted statements indicating that they knew that Kirk Meyer and plaintiff had lived together in 1985–1986 and that plaintiff was pregnant when they separated. Ms. Crockett did not testify in any proceeding. Ms. Flack stated at the social security hearing that Mr. Meyer never admitted to her that Cody was his son, but he asked her if she thought Cody was his child. (Tr. 83) The decedent and Ms. Outwater were not living together at the time of his death and he was not contributing to Cody's support.

Plaintiff does not rely on these witness statements. Rather, she contends that the January, 1992 order of the Probate Court is sufficient to satisfy the criteria in the regulations. Plaintiff relies on *Estate of Spencer*, 147 Mich.App. 626, 383 N.W.2d 266 (1965). In that case, the court noted that at common law, a child born out of wedlock was not permitted to inherit as an heir of the father. MCLA 700.111 is in derogation of the common law but is for a remedial purpose, to ameliorate the condition of illegitimates, and must be construed sensibly and in harmony with the legislative purpose. The court held that a mutually acknowledged relationship and biological parentage was sufficient; it was not necessary that there be an ongoing social relationship. In *Spencer*, the father's name was on the birth certificate,

1. The Prosecutor's Office requested blood testing to determine whether a Dean McCall was Cody's father. He was excluded on October 30, 1989 and the complaint filed to establish his paternity was dismissed by the Circuit Court. (Tr. 67–68) Subsequently a paternity complaint was filed against three men jointly. These were Kirk Meyer, Brian Outwater, and Jerry Marshall. (Case No. 90–17098–DP) On August 23, 1990, Brian Robert Outwater was also excluded as the Cody's father by blood testing. (Tr. 71) On November 16, 1990, Gerald Robert Marshall was excluded as the father. (Tr. 75) On December 12, 1990,

the complaint was dismissed as to all three for the reasons that Mr. Meyer had not been served and Mr. Outwater and Mr. Marshall had been excluded through bloodtests.

2. The testing was done on Mr. James Meyer and Ms. Elga Meyer, parents of the deceased alleged father who is identified as Mr. James Meyer, Jr. The wage earner's name in the instant case is Bryan Kirk Meyer, not James. However, it appears that the individual is the same.

and she bore his surname since birth. The father visited the child and voluntarily paid weekly support for the child for three years until he moved to another state. He objected to her adoption by the mother's new husband when the child was seven. He died when the child was 24. No ongoing social relationship continued, but the court found that unnecessary and determined the child to be an heir at law. The facts in that case are very different from the case at bar. Here, the child was about three years old when Kirk Meyer died. The child had not been told that Kirk was his father and Mr. Meyer had not acknowledged his parentage to Cody. There is some evidence of intermittent social contact, but Mr. Meyer and Ms. Outwater were not living together when Cody was born nor at any time thereafter. Considering all the facts in the record, it appears that substantial evidence supports the defendant's conclusion that Cody would not be an heir at law, applying the law of the state of Michigan.

However, the issue is whether the defendant can write on a clean slate and make an independent determination based on the evidence, or whether the Secretary must defer to the finding of the Livingston County Probate Court. This question is answered by the case of *Gray v. Richardson*, 474 F.2d 1370 (6th Cir.1973). In that case, the decedent wage earner had been found by the Ohio circuit court in a contested divorce proceeding to be the father of the child born during the marriage, despite his claims of sterility due to a vasectomy. The Sixth Circuit held that the Secretary is not bound by a decision of the state trial court where he/she is not a party, although it may not be ignored where it is fair and consistent with the law as enunciated by the highest court in the state. Special deference should be given by the federal tribunals to state court determinations in the general area of domestic relations. 474 F.2d 1370, 1373. This was because, traditionally, the states, not the federal government, have been considered the exclusive arbiter of these problems. *Id.* (citations omitted)

In *Gray*, the court found that the Secretary's finding of no paternity was supported by substantial evidence, but that the Secretary should have deferred to the state court determination finding that the deceased wage earner was the father. In reversing and remanding for an award of benefits, the Sixth Circuit stated:

> In the present case, the right of the child to Social Security benefits is controlled by the Ohio law of intestate succession of personal property. We have no doubt that an Ohio probate court, in determining an issue of intestate succession, would follow an adjudication of legitimacy made by an Ohio Court of Common Pleas in a contested divorce case.

474 F.2d at 1372.

The court emphasized that the determination of parentage was rendered in a contested proceeding, distinguishing cases from the Seventh and Fourth circuits where the state court determination was ex parte. The Sixth Circuit held that the Secretary is required to accept the determination made by the State court where certain prerequisites are found: (1) An issue in a claim for social security benefits previously has been determined by a state court of competent jurisdiction; (2) this issue was genuinely contested before the state court by parties with opposing interests; (3) the issue falls within the general category of domestic relations law; and (4) the resolution by the state trial court is consistent with the law enunciated by the highest court in the state. *Id.* at 1373.

In the instant case, points (1) and (3) are satisfied. The Secretary argues that the Probate Court did not follow the statute in making its judgment; the ALJ stated that it seemed to be acting as would a court of equity, of which powers it was not possessed and that the order would be subject to reversal by the state supreme court, and that therefore, the federal tribunal was not bound. Plaintiff argues that the probate court's order would only be reversed for abuse of discretion, citing *Marrs v. Board of Medicine*, 422 Mich. 688, 375 N.W.2d 321 (1985). This standard for reversal is that the ruling must result in a determination that is so palpably and grossly violative of fact and logic that it evidences not exercise of will, but perversity of will. *Id.* Plaintiff states that

since that was not the case here, the probate's court determination should be followed.

This misstates the argument.

 *Gray* requires that the proceeding be genuinely contested and be consistent with the law enunciated by the highest court in the state. Whether or not the order would be reversed on appeal for abuse of discretion is not controlling. Here, there were no assets of the estate and the transcript fails to show a genuine contest with respect to a determination that Cody was the sole heir at law. Further, the Michigan statute sets forth four exclusive categories sufficient to determine the intestate rights of an illegitimate child. No facts before the probate court record support the court's conclusion that one of these categories was met. Essentially, the court itself stated that the finding was based on the plaintiff's testimony that Mr. Meyer was the father and on the blood test. Neither of these, alone or together, established the criteria set forth in the Probate Code for a mutually established relationship of parent and child. The court made no finding that any of the criteria in the code were satisfied. Thus, it was not error for the federal tribunal to fail to give complete deference to it.

Since substantial evidence supports the Secretary's finding and the decision is not legally erroneous, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying child's benefits be affirmed.

 The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D.Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir.1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues, but fail to raise others with specificity,

will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987); *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D.Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: <u>JAN 30 1995</u>